## M. H. CLARK v. STATE.

No. A-188.    Opinion Filed June 20, 1911.

(116 Pac. 200.)

1.    HOMICIDE—Assault With Intent to Kill—Indictment.    Under section 2307, Snyder's Stat. 1909, which provides that "every person who attempts to shoot at another with any kind of firearm, air gun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon," etc., an indictment for an attempt to shoot another with intent to kill must allege the act or acts done by the accused toward the commission of the crime.

2.    HOMICIDE—Evidence of Lower Offense—Instructions.    Where the evidence is clearly insufficient to sustain the major offense charged in an indictment for assault with intent to kill, and there is evidence tending to prove the commission of an offense which is necessarily included in the offense charged, it is the duty of the trial court to instruct the jury of their right to convict of the lesser offense.

(Syllabus by the Court.)

*Appeal from District Court, Atoka County; A. T. West, Judge.*

On rehearing.   Reversed.

*J. H. Gernert* and *J. G. Ralls,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J.   Plaintiff in error was indicted, tried and convicted of the crime of attempt to shoot with intent to kill

W. A. Blackburn, and was sentenced to serve a term of 10 years in the penitentiary. The judgment and sentence was entered on December 5, 1908, from which judgment and sentence an appeal was taken by filing in this court on May 26, 1909, a petition in error and case-made. Pending said appeal defendant was committed to the penitentiary. At the January, 1910, term of this court said cause was affirmed. A petition for rehearing was duly filed, and, owing to the fact that the record in said cause was misplaced, the cause has been continued from term to term.

The evidence on the part of the state is substantially as follows:

The first witness, W. A. Blackburn, testified that he was a constable of Stringtown, and knew the defendant; that on the day named in the indictment the defendant was drinking and would not go home, but stayed around town all day; that about half past five in the evening he was informed that the defendant was down town, saying that no white man could take a gun off him; that he went down and found him; that the defendant ran his hand down in his clothes and he told defendant not to draw a gun on him, and ordered him to throw up his hands; that defendant then attempted to jerk his gun out, and he grabbed it and knocked defendant down and jerked the gun out of his clothes; that defendant got up and started at him; and he knocked him down again; that he had to hit him three or four times with his gun before he could stop defendant from fighting him; that the gun he took from him was a 45-caliber Colts; that Winters, Scott, Garside, O'Neal, and Irvin were present. On cross-examination he testified as follows:

"Q. Where was the defendant's gun when you first got it? A. Right in his pants here. He had his hand on it, and had it cocked. He had it just far enough that it hung in his clothing here. I liked never to have jerked it out. As I pulled it out, he pulled back and it caught my hand here. I jerked it out of his hand as I hit him. Q. You already had your gun out did you? A. Yes, sir; I had my gun in my hand."

On re-direct examination he testified:

"Q. I will ask you what was defendant trying to do when you

caught that gun? A. He was trying to get it out of his clothes—trying to get it out all the time, and me hanging to it, and me telling him not to."

Claud Irvin was the next witness for the state, and testified that he drove a dray for Blackburn; that the defendant got in the wagon and rode to the depot with him; that, when they got to the depot, the defendant dropped a gun and picked it up, and put it down in his pants leg, and started off down the track, and about a minute or so afterwards Blackburn came, and witness told him what defendant had said, and Blackburn went after him; that defendant was some 30 or 35 yards away, and when Blackburn got up within 10 or 15 feet of defendant, he said stop, and defendant kept on walking down the track; that, when Blackburn got up within 5 or 6 feet of him, defendant stopped and put his hand to his pants; that Blackburn went for his gun, and it seemed as if defendant still held his hand where he first put it, but he could not tell what he was doing; that Blackburn reached over and got defendant's hand or gun, and struck defendant on the head with a gun; that defendant rolled down the dump, and that, when he got up, Blackburn had the gun; that Blackburn then handed to witness defendant's gun; that defendant did not get his gun out at all; that when defendant started to get up Blackburn hit him again and defendant fell back; that these licks were all on the head; that Blackburn's gun was a 38-caliber Colts.

J. C. Scott, the next witness for the state, testified that he was at the depot, and Blackburn, when he reached defendant, told him to hold on and told him to give up his gun, and it seemed as if he had hold of him; that they scuffled around a little, and Blackburn hit him over the head with a six-shooter, and defendant fell down the dump and Blackburn with him; that when Blackburn got up he had a six-shooter in each hand; that when Blackburn pulled the pistol out of defendant's pants something hung onto it which looked like a part of the defendant's underclothing.

C. H. O'Neal and M. R. Winters also testified for the state

that they saw the difficulty; and their testimony was substantially the same as that of the other witnesses.

This was all the testimony received upon the trial.

Counsel for defendant at the close of the testimony moved the court to direct a verdict of not guilty.

This statement of the evidence tending to show the guilt of the defendant is made for the purpose of showing that the evidence is not necessarily conclusive of the guilt of the defendant of the crime charged. It might be sufficient to show the commission of an included crime of lesser degree, but it is clearly insufficient to support the verdict and judgment. There was no request on the part of defendant, and the court failed, to instruct the jury that they might find the defendant guilty of an offense the commission of which is necessarily included, but of lesser degree than assault with intent to kill. Section 6875, Snyder's Stat. 1909, provides:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit the offense."

An assault with intent to do bodily harm by shooting or attempting to shoot at another without justifiable or excusable cause is included in an indictment of assault with itent to kill by shooting or attempting to shoot at another.

Whenever the evidence as in this case warrants it, it is the duty of the court, whether requested by the defendant or not, to instruct the jury upon the other offenses included in the crime charged. *Vickers v. U. S.,* 1 Okla. Cr. 452, 98 Pac. 467. Mr. Bishop says that the subject of attempt to commit crime is alike intricate and important. The reports are full of cases upon it, yet it is but imperfectly understood by the courts. Bishop's New Crim. Law, § 725.

Here the indictment is for an attempt to shoot with intent to kill, and it is necessary, to constitute the crime, that the defendant should have done some overt act towards the commission of the crime. This is an essential element of the offense, and

without it the crime does not exist. Being therefore an essential element of the offense which is not complete without it, the acts constituting the offense must be alleged and proved. There must be an intent to commit the crime and some act done in pursuance of such intent, which falls short of the result intended. Here the only act of the defendant as shown by the evidence was an attempt to draw a pistol from his waistband, and the evidence fails to show that the pistol was loaded. The attempt to kill as contemplated by the statute must be manifested by some act which goes beyond mere preparation to commit the crime. Mr. Bishop says:

"It is plain that, if a man who has a wicked purpose in his heart does something entirely foreign in its nature from that purpose, he does not commit a criminal attempt to do the thing proposed. On the other hand, if he does what is exactly adapted to accomplish the evil meant, yet proceeds not far enough in the doing for the cognizance of the law, he still escapes punishment. Again, if he does a thing not completely, as the result discloses, adapted to accomplish the wrong, he may under some circumstances be punishable; while under other circumstances he may escape. And the difficulty is not a small one to lay down rules readily applied, which shall guide the practitioner in respect to the circumstances in which the criminal attempt is sufficient."

If the verdict finding the defendant guilty as charged and assessing the maximum penalty of the law was not the result of passion or prejudice, obviously it was not tempered with mercy. Upon a careful examination of the record, we are convinced that the verdict and judgment is contrary to the law and to the evidence.

The judgment of conviction is therefore reversed and the cause remanded, with directions to grant a new trial, and the warden of the state penitentiary at McAlester is directed to deliver the defendant to the sheriff of Atoka county, and said sheriff is ordered to hold said defendant in custody subject to the order of the district court of Atoka county.

FURMAN, P. J., and ARMSTRONG, J., concur.