## W. J. TAYRIEN v. STATE.

No. A-5288.   Opinion Filed Feb. 8, 1926.
(242 Pac. 1061.)

232

T. J. Leahy, Campbell & Ray, and J. R. Charlton, for plaintiff in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

DOYLE, J.  The information in this case charges that in Washington county, June 18, 1923, W. J. Tayrien "did then and there willfully, unlawfully and feloniously commit an assault upon the person of one Frances Collins and with his hands, seize, hold, strike and ill treat her," with intent "to carnally know, rape, ravish and have sexual intercourse with her," a female under the age of 16 years, to wit, 15 years, and not the wife of the said defendant.  The jury returned a verdict finding him guilty as charged in the information and fixing his punishment at imprisonment in the penitentiary for a term of three years. He has appealed from the judgment rendered on the verdict.

A number of errors are assigned and argued. We have examined and considered them, but find it unnecessary to discuss the points raised, further than to say the information is sufficient and the demurrer thereto was properly overruled, and we find no error in the rulings of the court in the admission and rejection of evidence.

The assignments that the verdict is not sustained by sufficient evidence, and that the court erred in giving and refusing instructions, will be considered together.

The following brief statement of the case will be sufficient to make clear the legal propositions presented:

The prosecutrix, Frances Collins, was past 15 years of age. She and a number of other girls attended what they called a "kid party," dressed as small children, wearing half hose and short dresses. The defendant, Tayrien, was the owner of an automobile, and with two other boys, Herbert Gibbs and Jack Brandon, about 11 o'clock that night went to where the party was being held, apparently for the purpose of looking on. It appears they knew the most of the girls. It was arranged that the prosecutrix was to have as her escort Herbert Gibbs, and that Mildred Luten was to have as her escort Jack Brandon. Tayrien did not succeed in getting a girl. That they all got into Tayrien's car, and he drove around town and then out on the Tulsa highway a short distance, then turned into the road over Toalsons Hill, and after going over the hill stopped the car. Frances Collins and Herbert Gibbs occupied the back seat and Brandon and the girl Luten and Tayrien occupied the front seat. After the car stopped, according to the testimony of the prosecutrix, Herbert Gibbs undertook to put his hand under her dress and she prevented him, then Tayrien turned around and attempted to put his hand under her dress, and she told him to quit. About that time Herbert Gibbs, according to her testimony, became sick. Then Tayrien got out of the front seat and into the back seat with her and Gibbs. That he tried to put his arms around her and she moved over against Gibbs. That Gibbs got out of the car, and Tayrien again tried to put his hand under her dress, and she kept trying to keep him from doing so. That he attempted to kiss her and then pushed her down between

the front and back seats. That he was on top of her. That his trousers were unbuttoned at that time, but they were not down. That he again attempted to kiss her. That during this time Herbert Gibbs was standing by the side of the car. That she did not know just where Jack Brandon and the Luten girl were. That she had no conversation with Tayrien except to ask him to get off, and he gave her to understand that he would not. That they had been struggling between the seats for about 15 minutes when the Luten girl and Brandon returned to the side of the car, and Brandon opened the car door. That she kept struggling and got about half-way out of the car and hurt her back. That she told Tayrien that her back was about broke, and Brandon put his knee under her back and held her up, and Tayrien was still on top of her. That they remained in that position for another 15 minutes, when she told Tayrien that she could not fight any longer, and he said, "Well, I will let you alone if you won't call me a quitter." That she told him she would not call him a quitter, and he got up. Then Brandon helped her out of the car, and they walked her around a little. Then she got in the front seat with Brandon and Tayrien, with the Luten girl and Gibbs in the back seat, and riding that way they went home. That when Tayrien attempted to kiss her, she told him that she would rather kiss a dog than to kiss him. She also testified that when Brandon came back, and while standing there, when she and Tayrien were struggling Brandon said something to Gibbs about betting on the result of the struggle between her and Tayrien.

Mildred Luten testified that she saw Tayrien and Frances Collins wrestling in the bottom of the car, and they were struggling there about 20 minutes, and Tayrien told Brandon to hold up Frances' head, and he did, and Frances asked her to wipe the perspiration off her

leg and she did; that Brandon said to Frances, "I will bet on you kid, or something like that," and Frances said: "Don't, Bill, you are breaking my back. I cannot struggle any longer; please, Bill, quit." And Bill said, "I will if you won't call me a quitter," and she said, "I won't call you a quitter," and the struggle ended.

There is no testimony on the part of any witness that defendant by any words spoken during the struggle intended to accomplish an act of sexual intercourse, or that he made any statement to her as to what his intentions were.

As a witness in his own behalf, the defendant testified that after he stopped the car he got out and looked at the gasoline gauge; that Gibbs complained of being sick and got out of the car, leaving him sitting with Miss Collins; that he put his arms around her and tried to kiss her, and she resisted, finally said she would rather kiss a dog, and he told her if she thought that way about it he would not try to kiss her any more; she said something about him being a quitter, and once in a while he tried again to kiss her; that at no time was he on top of her, and he did not at any time attempt to put his hands under her clothes; that his trousers were not unbuttoned.

The witnesses Herbert Gibbs and Jack Brandon testified in substance to the same facts as did the defendant.

The defendant asked for an instruction submitting the issue of the included offense of assault and assault and battery, which was refused and exception allowed, and no instruction on that branch of the case was given by the court. Our Code of Criminal Procedure provides that the jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or an attempt to commit the offense. Section 2740, C. S. 1921. The rule is well settled that

where there is evidence tending to prove the commission of an offense which is necessarily included in the offense charged, it is error for the trial court to refuse to instruct the jury of their right to convict of the lesser offense. Clark v. State, 6 Okla. Cr. 100, 116 P. 200.

In Alexander v. State, 58 Tex. Cr. R. 621, 127 S. W. 189, the Texas Court of Criminal Appeals said:

"If the appellant took hold of the girl or put his hands upon her in a violent manner, yet if he did not have the specific intent at the time that he took hold of her to have intercourse with her either with or without her consent, then he would only be guilty of indecent familiarity, which, under the law, would be aggravated assault.

"Believing that the court was in error in not submitting the issue of aggravated assault to the jury, the judgment will be reversed."

In State v. Powers, 181 Iowa, 452, 164 N. W. 856, the Supreme Court of Iowa held:

"In a prosecution for assault to rape, evidence being sufficient to sustain verdict for assault and battery, that issue should have been submitted."

"In State v. Hoag, 232 Mo. 308, 134 S. W. 509, the Supreme Court of Missouri said:

"The complaint of the defendant that the trial court erred in failing to give the jury an instruction on the law of common assault seems to us to be well taken. The crime of common assault is necessarily embraced in the charge of felonious assault. * * *

"If the jury believed the evidence of prosecutrix, and yet, from the surrounding circumstances, did not believe defendant intended to have sexual intercourse with her at the particular time when she testified that he placed his hand under her clothes, then clearly they would have been justified in finding him guilty of common assault. When, as in the case at bar, the evidence shows that a defendant may not be guilty of the offense

charged, but may be guilty of an offense necessarily embraced in the charge, it becomes the duty of the trial court to instruct the jury upon such minor offense whether it be requested to do so or not. * * * For the error of the trial court in failing to instruct the jury on the law of common assault, as applicable to the evidence in this case, its judgment is reversed, and the cause remanded for a new trial."

And see State v. Langston, 106 Kan. 672, 189 P. 153; People v. Gerner, 211 Mich. 44, 178 N. W. 75; State v. Smith, 150 Ark. 193, 233 S. W. 1081; State v. Williams, 185 N. C. 685, 116 S. E. 738.

Upon consideration of the evidence in the case and in view of the rule declared in the foregoing cases, we are convinced that the court erred in refusing to give the requested instruction, and as the case must be again submitted to a jury, we refrain from a discussion of the evidence, further than to say that upon the hypothesis that the testimony for the defense is true, the defendant is entitled to have the jury instructed upon the included offenses.

For the error indicated, the judgment of conviction is reversed and the case remanded, with direction to grant a new trial.

BESSEY, P. J., and EDWARDS, J., concur.