ERNEST BROCKMAN v. STATE.

No. A-9078.   Sept. 28, 1936.
(61 Pac. [2d] 273.)

Amos T. Hall, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is prosecuted from a judgment of conviction pronounced and entered on the 30th day of September, 1935, in pursuance of the verdict of

the jury finding the defendant guilty of the crime of attempt to commit rape and assessing his punishment at confinement in the state penitentiary for a period of 15 years.

The charging part of the information is as follows:

"That Ernest Brockman, on the 15th day of November, 1934, A. D., in Tulsa County, State of Oklahoma, and within the jurisdiction of this Court, did unlawfully, wilfully and feloniously, attempt to have sexual intercourse and carnally know one Lena Gibson, a female person, and against the will of her, the said Lena Gibson, committed in way and manner as follows, that is to say by then and there taking hold of the said Lena Gibson, and then and there choking her and threatening to do her great bodily harm, and then and there struggling and contending with her, the said Lena Gibson, with the unlawful and felonious intent then and there upon the part of said defendant to rape, ravish and carnally know and have sexual intercourse with her, the said Lena Gibson, and she, the said Lena Gibson not then and there the wife of him, the said Ernest Brockman, but then and there failed and was prevented and intercepted in the perpetration thereof, contrary to," etc.

An examination of the record leads to the conclusion that the judgment of conviction should be reversed, and this without regard to the merits of the question of guilt or innocence of the defendant. To affirm the judgment would do violence to well settled and recognized rules of evidence and of practice in criminal prosecutions, and would be in violation of our conception of the rights of every individual charged with crime.

From the testimony it appears that at the time of the alleged commission of the crime the prosecutrix, a white woman and a widow, was living in Tulsa, on East Easton street, with her uncle, aunt, and cousin; that she

was sleeping on a divan in the living room of her uncle's home and her uncle was sleeping in the next room. There was an open archway between. On the day alleged, between 5 and 6 o'clock in the morning, a colored man appeared in her room and assaulted her.

The prosecutrix testified that she was awakened by the lighting of a match and saw a man standing in the archway holding a lighted match in his hand. That she thought it was her cousin and said, "Walter, is that you?" The match went out, the man struck another one, and said, "You be still," then walked over to the divan where she was, leaned down over her, put his hand on her forehead and said, "You be quiet, do you hear me," and she said, "I will be quiet"; then he asked her "to give him a piece of pussy." That she was scared and pushed him away and said, "You get out of here." He put his hands on her throat and started choking her and she called her uncle three times before he answered. The defendant then turned her loose and ran out the door. That when he came to the bed she saw he was a colored man. She positively identified the defendant as the man who assaulted her.

Over the objections of counsel for the defendant, the court permitted the second witness called by the state, Mrs. J. W. Krempush, to testify that the defendant entered her home on or about November 18th, between the hours of 3:30 and 5:30 in the morning, snapped the light out, put one hand on her mouth and one hand on her throat and told her to be quiet; about that time her baby started crying and he just turned loose and ran from the room. That several days afterwards she saw the defendant at the police station and identified him as the man that was in her room that morning.

Mrs. Charles F. Sewell, the next witness called, was over the defendant's objection permitted to testify that on the morning of November 18, 1834, between 3 and 3:30 o'clock, a man appeared at the side of her bed, where her 20 year old daughter was sleeping beside her, with a knife in his hand. That he put the knife at her throat and said, "I want a piece of pussy." About that time her daughter awakened and said, "What is it, mother?" Then he said, "You had better tell her to keep quiet or I will kill you both," and she called her husband. When her husband answered, the man turned and ran out the door. That a few days after this occurrence the officers brought the defendant to her house and she immediately recognized his voice. That the defendant was the man that assaulted her in her room that morning.

F. M. Glore testified that he was Lena Gibson's uncle by marriage. That on the date alleged she was staying at his place and was sleeping on the divan in the living room. That he heard some one scream two or three times before he was fully awake and he said, "What is going on there?" Then somebody ran out the front door. That he asked her what was the matter and she said there was a man in the room. That it was then 5:15 in the morning.

At the close of the state's evidence in chief a motion was made by the defendant for a directed verdict on the ground that the evidence was insufficient to warrant a conviction, which motion was overruled.

As a witness in his own behalf, the defendant, Brockman, testified in part as follows: That he was born in South Carolina, 27 years old, married, and the father of two children; came to Spiro, Okla. in 1917, and moved to Tulsa in 1921; had been working for the Mayo Hotel

since it opened until November 20, 1934. That he usually left home around 5:30 in the morning to go to the hotel and have everything ready to open up the coffee shop at 6 o'clock. That he was never in Mrs. Gibson's room and never assaulted or attempted to rape her. That the morning of November 21st, on his way to the country club, he passed a car parked at the side of the street with the lights out; it was dark; some person jumped out of the car and told him to stop. That he thought that they were hi-jackers and ran, and they began to shoot at him. That they overtook him at Haskell and Elgin and arrested him. Then they carried him to Mrs. Gibson's house, and asked her "if I was the person who attempted to rape her." She said she did not know. Then they put out the light and had him get behind the curtains across the archway there and scratch matches for her to identify him. That they would turn the electric light off and on to see if she could identify him. Mr. Glore, her uncle, was there. They took him next to Phyllis Perez's house, at 207 East Fairview, and asked her "if I was the man that committed a burglary there." She said she did not know. Then they carried him to Mrs. Sewell's house and told her that they had caught the negro that attacked her. Mrs. Sewell told them she would like to feel his hands and see whether they were soft or not, because the person who attacked her had soft hands. That she examined his hands and said they were soft like the hands of the person who attacked her. That, after they took him to the police station, they brought Mrs. Sewell into the room and she examined his hands again. When she went out, this officer here, Mr. Hughes, came in and said to him, "She has signed a statement proving your identity," and asked him if he would confess to it, and he told him no, he would not.

Inez Brockman, wife of the defendant, testified that they had been married nine years, have two children, little girls, ages six and four; that her husband was working at the Mayo Hotel, and each morning left their home to go to his work about 5:30; that he was at home every night in November, including the night of November 15, 1934.

Several character witnesses qualified as knowing the general reputation of the defendant in the community in which he lives for being a peaceable, law-abiding citizen, and each testified that his reputation was good.

Of the various errors assigned, we shall notice those only which on the new trial granted will be liable to again arise.

A number of alleged prejudicial errors are assigned upon exceptions taken to rulings of the court in the admission of evidence on the part of the state showing, or tending to show, that the defendant has been guilty of offenses other than the one charged in the information and the exclusion of evidence on the part of the defendant.

The record shows that the defendant moved the court for the reasons stated to strike and exclude the testimony of the witnesses Krempush and Sewell from the consideration of the jury.

In our opinion, for the reasons stated, the testimony given by these two witnesses was clearly incompetent, inadmissible, and prejudicial to the rights of the defendant.

The general rule is that, when a defendant is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone.

This rule is tersely stated by Mr. Bishop, who says:

"The state cannot prove against a defendant any crime not alleged, either as foundation for a separate punishment, or as aiding the proofs that he is guilty of the one charged, even though he has put his character in issue." 2 Bishop's New Crim. Proc. § 1120.

In Koontz v. State, 10 Okla. Cr. 553, 139 Pac. 842, Ann. Cas. 1916A, 689, this court held:

"Evidence of an offense other than the one charged is admissible only when it tends to prove the offense charged. To be competent and admissible, it must have some logical connection with the offense charged."

In Miller v. State, 13 Okla. Cr. 176, 163 Pac. 131, 133, L. R. A. 1917D, 383, it is said:

"Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish: (1) Motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial." Wharton on Crim. Ev. (9th Ed.) § 48; Underhill on Ev. § 58; Smith v. State, 14 Okla. Cr. 348, 171 Pac. 341; State v. Rule, 11 Okla. Cr. 237, 144 Pac. 807; Vickers v. United States, 1 Okla. Cr. 452, 98 Pac. 467.

In the case of People v. Molineux, 168 N. Y. 264, 294, 61 N. E. 286, 293, 62 L. R. A. 193, the New York Court of Appeals say:

"This rule, so universally recognized and so firmly established in all English-speaking lands, is rooted in that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of Magna Charta. It is the product of that same humane and enlightened public spirit which, speaking through our common law, has decreed that every person charged with the commission of a crime shall be

protected by the presumption of innocence until he has been proven guilty beyond a reasonable doubt. This rule, and the reasons upon which it rests, are so familiar to every student of our law that they need be referred to for no other purpose than to point out the exceptions thereto."

It appears that in this connection the court instructed the jury:

"That evidence of other crimes of a precisely similar nature to that charged in the information in this case, and not connected with it are not admissible to prove the commission of the act involved in this specific charge, but they are given to you for the limited and specific purpose of aiding you in determining the quality of the act, and the legal character of the offense charged by illustrating the intent with which the act was committed.

"That evidence of the commission of other and similar acts is only to be considered for the purpose of showing the probability of the act charged but that such evidence in and of itself is insufficient to prove the charge contained in the information in this case; and unless you find from the evidence in this case beyond a reasonable doubt, exclusive of the evidence tending to show the commission of other crimes that the defendant committed the crime charged in the information in this case, then you shall not consider the evidence of other crimes for any purpose whatsoever."

However, we do not think that the admission of the evidence in question to the defendant's prejudice was, by any means, cured by giving the aforesaid instruction. Such evidence gives opportunity for the conviction of an accused person upon mere prejudice instead of by evidence showing the actual commission of the crime for which a defendant is on trial. It compels a defendant to meet separate and distinct charges of crime, which he might successfully refute if given the opportunity to do so, unembarrassed by other issues.

It is next contended that the court erred in not properly instructing the jury as to the law of the case.

The court instructed the jury that the defendant was charged with the offense defined by section 1822, St. 1931, which reads:

"Every person who attempts to commit any crime, and in such attempt does any act toward the commission of such crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, where no provision is made by law for the punishment of such attempt, as follows."

The defendant asked for an instruction submitting the issue of the included offense of assault and battery, which was refused and exception allowed, and the instructions given by the court did not submit the issue of the included offense of assault with intent to commit a felony as defined by section 1869, which reads:

"Every person who is guilty of an assault with intent to commit any felony, except an assault with intent to kill, the punishment for which assault is not otherwise prescribed in this code, is punishable by imprisonment in the state penitentiary not exceeding five years, or in a county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment."

Our Code of Criminal Procedure provides that the jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense. Section 3097.

Under the statute, the trial court should submit the case to the jury for consideration upon every degree of assault which the evidence in any reasonable view of it suggests, and the instructions given must be applicable to the testimony introduced on the trial.

In the case of Tayrien v. State, 33 Okla. Cr. 231, 242 Pac. 1061, 1063, it is said:

"The rule is well settled that where there is evidence tending to prove the commission of an offense which is necessarily included in the offense charged, it is error for the trial court to refuse to instruct the jury of their right to convict of the lesser offense. Clark v. State, 6 Okla. Cr. 100, 116 Pac. 200.

"In Alexander v. State, 58 Tex. Cr. R. 621, 127 S.. W. 189, the Texas Court of Criminal Appeals said:

" 'If the appellant took hold of the girl or put his hands upon her in a violent manner, yet if he did not have the specific intent at the time that he took hold of her to have intercourse with her either with or without her consent, then he would only be guilty of indecent familiarity, which, under the law, would be aggravated assault.

" 'Believing that the court was in error in not submitting the issue of aggravated assault to the jury, the judgment will be reversed.'

"In State v. Powers, 181 Iowa, 452 164 N. W. 856, the Supreme Court of Iowa held:

" 'In a prosecution for assault to rape, evidence being sufficient to sustain verdict for assault and battery, that issue should have been submitted.'

"In State v. Hoag, 232 Mo. 308, 134 S. W. 509, the Supreme Court of Missouri said:

" 'The complaint of the defendant that the trial court erred in failing to give the jury an instruction on the law of common assault seems to us to be well taken. The crime of common assault is necessarily embraced in the charge of felonious assault. * * *

" 'If the jury believed the evidence of prosecutrix, and yet, from the surrounding circumstances, did not believe defendant intended to have sexual intercourse with

her at the particular time when she testified that he placed his hands under her clothes, then clearly they would have been justified in finding him guilty of common assault. When, as in the case at bar, the evidence shows that a defendant may not be guilty of the offense charged, but may be guilty of an offense necessarily embraced in the charge, it becomes the duty of the trial court to instruct the jury upon such minor offense whether it be requested to do so or not. * * * For the error of the trial court in failing to instruct the jury on the law of common assault, as applicable to the evidence in this case, its judgment is reversed, and the cause remanded for a new trial.'

"And see State v. Langston, 106 Kan. 672, 189 Pac. 153; People v. Garner, 211 Mich. 44, 178 N. W. 75; Smith v. State, 150 Ark. 193, 233 S. W. 1081; State v. Williams, 185 N. C. 685, 116 S. E. 736, 738."

In Rose v. State, 32 Okla. Cr. 294, 240 Pac. 754, 755, it is said:

"The prosecutrix being above the age of 18 years, a consideration of statutory rape is not necessary, for, if the defendant attempted to commit rape, it must be rape by force, under the fourth subdivision of section 1834, Comp. St. 1921 [section 2515, St. 1931]. This section of the statute defines rape as an act of sexual intercourse accomplished with a female, not the wife of the perpetrator where she resists, but her resistance is overcome by force and violence. Then, in order to constitute the crime of attempt to commit a rape, it is essential that the state prove that the defendant attempted to accomplish an act of sexual intercourse with the prosecutrix by force and violence to overcome her resistance, and the doing of some act toward the commission of such crime, but failed or was prevented or intercepted in the perpetration thereof. An attempt is defined in section 2297, Comp. St. 1921 [section 1822, St. 1931]. In order to convict a defendant of an attempt to commit rape upon a female above the age of 18 years, there must be proven a

specific intent to use the force necessary to accomplish such purpose, notwithstanding the resistance of the female, and also some overt act. When the evidence proves no more than solicitation to have sexual intercourse and a technical assault while urging such solicitation, it is insufficient."

The information to which no objection was interposed is sufficient to charge an attempt to commit rape as defined by the first, second, and third subdivisions of section 2515, but it does not allege an intent to accomplish an act of sexual intercourse by means of force and violence as defined by the fourth subdivision of said section. We think this is an essential allegation where the prosecutrix is not within the age of consent. An assault is a constituent element of the crime of an attempt to commit rape. Williams v. State, 10 Okla. Cr. 336, 136 Pac. 599; Wines v. State, 7 Okla. Cr. 450, 124 Pac. 466.

With this omission the information is sufficient to charge an assault with intent to commit the crime of rape as defined by the fourth subdivision of said section, and also the included offense of assault and battery.

Upon the record and consideration of all the evidence we are constrained to hold that the court erred in refusing and failing to submit the issues of assault with intent to commit rape and of assault and battery and in restricting the verdict to that of guilty or not guilty of an attempt to commit rape.

It is also insisted that the county attorney in his opening statement and the assistant county attorney in his closing argument to the jury made improper and prejudicial remarks, and that the court erred in overruling the defendant's objections thereto.

It appearing that the objectionable remarks were largely in reference to the testimony hereinbefore held

inadmissible and prejudicial, we deem it unnecessary to further discuss the same.

It is a matter of the greatest concern to care for and protect from violence and outrage the womanhood of our country. The protection of the mothers, wives, and daughters of our land, and the preservation of the sanctity and security of our homes, all depend upon the certainty and promptness with which cases of this character shall be visited with the just penalty of the law, and it is the duty of the courts and juries to give it effect. Vickers v. United States, supra.

However, the law of the land guarantees to every one accused of crime, regardless of race or color, whether of high or low degree, whether rich or poor, a fair and impartial trial, and, if that right has been infringed, not in respect to mere technicalities, but in disregard of substantial rights, however undesignedly, the judgment of conviction should be reversed and a new trial awarded.

Upon the record before us, it clearly appears that the case was tried and submitted to the jury upon an erroneous theory of the law, prejudicial to the substantial rights of the defendant.

For the reasons hereinbefore stated, the judgment of the district court of Tulsa county is reversed, and the cause remanded to that court for further proceedings not inconsistent with the views expressed in this opinion. The warden of the state penitentiary will surrender the defendant to the sheriff of Tulsa county, who will hold him in custody until he shall be discharged or as otherwise ordered according to law.

EDWARDS, P. J., and DAVENPORT, J., concur.