## BILL EASTER v. STATE.

No. A-9949. March 11, 1942.

(123 P. 2d 691.)

A. G. Windham, of Poteau, for defendant.

Mac Q. Williamson, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and Clyde Followell, Co. Atty., of Poteau, for the State.

BAREFOOT, P. J. Defendant was charged in the district court of Le Flore county with the crime of assault with intent to rape, was tried, convicted, and sentenced to pay a fine of $100 and serve 90 days in the county jail, and has appealed.

The first assignment of error is that the evidence is insufficient to sustain the verdict of the jury, and second, that the trial court erred in failing to instruct the jury upon the offense of assault and battery, which was an included offense, and the evidence clearly presented this issue for the consideration of the jury.

These issues may be presented together.

The statute upon which the information was based is Oklahoma Statutes 1931, section 1869, 21 Okla. St. Ann. § 681:

"Every person who is guilty of an assault with intent to commit any felony, except an assault with intent to kill, the punishment for which assault is not otherwise prescribed in this code, is punishable by imprisonment in the State Penitentiary not exceeding five years, or in a county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment."

The construction of this statute has been under consideration in many cases before this court. In the late cases of Cape v. State, 61 Okla. Cr. 173, 66 P. 2d 959, and Kitchen v. State, 66 Okla. Cr. 423, 92 P. 2d 860, the terms of this statute have been fully discussed and the

decisions of this and other courts have been reviewed. The facts in the Cape Case are somewhat similar to the facts in the instant case. In these cases the court has stated that an assault with intent to commit rape includes every element of the crime of rape by force overcoming resistance except penetration. In the Cape case [61 Okla. Cr. 173, 66 P. 2d 963] it is stated:

"The felonious intent is the essence of the offense. It is elementary, when a specific intent is required to make an act an offense, that the doing of the act does not raise a presumption that it was done with the specific intent. Intent, which is essential to support conviction of assault with intent to rape, cannot be presumed, but must be shown to exist by competent evidence and beyond a reasonable doubt. Something more than a mere intention and solicitation is necessary.

"It is therefore necessary that the acts and conduct of the defendant should be shown to be such that there can be no reasonable doubt as to the felonious intent. If these acts and conduct are equally consistent with the absence of the felonious intent, then it is clear they are insufficient to justify or sustain a verdict of guilty.

"In order to convict on a charge of assault with intent to commit rape by force upon a woman over the age of consent, the evidence should not only show an assault, but that the defendant assaulted the prosecutrix with the intention of gratifying his passion on her person at all events, notwithstanding any resistance she might make. Rose v. State, 32 Okla. Cr. 294, 240 P. 754; Brockman v. State [60 Okla. Cr. 75], 61 P. 2d 273; Vinsen v. State, 102 Tex. Cr. R. 235, 277 S. W. 644.

"In the case of People v. Cieslak, 319 Ill. 221, 149 N. E. 815, 816, it is said:

" 'The proof of a mere assault and battery, however aggravated it may be, without the intent to rape, will not warrant a conviction of assault with intent to rape, nor will the proof of mere licentious conduct, or even violent familiarity, with the female in an effort to induce her

to yield to the embraces of the assailant, where there is no proof that he intended to have carnal knowledge of her by force and against her will. The specific intent charged is the gist of the offense.'

"In Witt v. State, 29 Okla. Cr. 357, 233 P. 788, 789, it is said:

" 'The charge is one that arouses the passions and prejudices of jurors, and for that reason it is the duty of the court to closely scrutinize the evidence, and where the evidence of the state is unreasonable, inconsistent, and contradictory, and there is inherent evidence of improbability or indications that the prosecution is maliciously inspired, the court should not permit a conviction to stand.'

"In Ferbrache v. State, 21 Okla. Cr. 256, 206 P. 617, this court held:

" 'Under the laws of this state, conviction for rape may be had on the uncorroborated testimony of the prosecutrix; but when her testimony is contradictory, and the defendant testifies and denies specifically the testimony of the prosecutrix, and his testimony is corroborated, the testimony of the prosecutrix, standing alone, is not sufficient to warrant a conviction.'

"This court does not hold with some that, as a matter of law, rape or assault with intent to rape cannot be established by the uncorroborated testimony of the prosecutrix, but in common with all courts recognizes that, without such corroboration, her testimony must be clear and convincing; and while there is no rule of law which forbids a jury to convict on the uncorroborated testimony of the prosecutrix, provided they are satisfied beyond a reasonable doubt of the truth of her testimony, yet the courts have always recognized the danger of conviction on her uncorroborated testimony, and her testimony, if inherently improbable and uncorroborated, will not justify or support a conviction; as the only reasonable conclusion in such cases is that such verdicts are the result of passion or prejudice, and therefore contrary to law.

Dawes v. State, 34 Okla. Cr. 225, 246 P. 482; Davidson v. State, 57 Okla. Cr. 188, 46 P. 2d 572.

"The rule in such cases is that corroborating testimony should tend to show the material facts necessary to establish the commission of the crime. It is not indispensable that such corroboration should be furnished by positive and direct evidence, but proof of circumstances legitimately tending to show the existence of the material facts will be sufficient to authorize a conviction.

"An examination of the proof in this case fails to disclose any evidence corroborating the testimony of the prosecutrix, excepting her physical condition immediately after the alleged assault, which showed an assault and battery. Her testimony is contradictory and bears upon its face evidence of unreliability, and for this reason we think there was needed corroboration, that her condition was the result of force and violence on the part of the defendant in attempting to overcome her resistance to an assault with intent to commit rape.

"The controverted questions were: Which was the aggressor, and with what intent was the assault and battery committed? The conduct of these parties must be considered in connection with the fact that they both were excited by intoxicating liquor. The testimony of the prosecutrix, when applied to the admitted facts in this case, is of a very doubtful character. She testified that the defendant made improper advances and told her his intention was to have sexual intercourse; that she was trying to prevent him, and he hit her with his fist on the head and hit her more than once; that during the struggle, which lasted about forty five minutes, she picked up a car crank and hit him on the head with it. She did not deny that she told Dr. Robinson that she was hit with a car crank, but that she used the crank first, and that she told the doctor not to report the case.

"It is admitted that she made no complaint and told no one that night that the defendant had attempted to rape her."

While this court has held that it is unnecessary to corroborate the prosecutrix in cases of this character, we have also held to the rule that her testimony must be clear and convincing and must not be inherently improbable or contradictory. If possible, it should be corroborated. It is not necessary that the corroboration be by direct and positive testimony, but proof may be by circumstances which show the existence of the material facts. From a reading of the cases from this court and other courts, it will be seen that the question of intent is the real basis for the decision of the jury, the question being, Was there an intent on the part of the defendant to have or attempt to have intercourse with the prosecutrix? The laying of hands on her, and even assault and battery, however violent, are not sufficient to sustain the charge under the statute unless there be an intent on the part of the defendant to commit the act of intercourse.

From a reading of the cases decided by this court it has often been held that the crime of assault and battery, Oklahoma Statutes 1931, §§ 1865 and 1866, 21 Okla. St. Ann. §§ 641 and 642, is an included offense in the statute above quoted and under which defendant was charged. Brockman v. State, 60 Okla. Cr. 75, 61 P. 2d 273; Tayrien v. State, 33 Okla. Cr. 231, 242 P. 1061; Fannin v. State, 65 Okla. Cr. 444, 88 P. 2d 671; Kilpatrick v. State, 71 Okla. Cr. 129, 109 P. 2d 516.

It is also provided by Oklahoma Statutes 1931, section 3097, 22 Okla. St. Ann. § 916, as follows:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

In construing the above statute it has often been held by this court that the trial judge is required to give

in his instructions one covering the material issues raised. This includes a charge which presents the issue as revealed by the testimony offered by the defendant. Kilpatrick v. State, 71 Okla. Cr. 129, 109 P. 2d 516, and cases heretofore cited.

This court has also held that one cannot be heard to complain of the failure of the court to instruct upon a particular issue or feature of the case where he has not requested a proper instruction covering this issue. But this statement of law has always been subject to this exception: That where this court is of the opinion, in the light of the entire record and the instructions given, that the court has failed to instruct the jury upon some material question of law and where accused has been deprived of a substantial right, the case will be reversed. Lumpkin v. State, 5 Okla. Cr. 488, 115 P. 478.

This now brings us to the facts in the instant case. Defendant was charged under the statute above quoted with the crime of assault with intent to rape. The trial court charged the jury under this statute. He did not charge the jury under the assault and battery statutes above quoted, and the defendant did not make a request that the jury be so instructed.

The facts are that defendant on the 17th day of June, 1938, was a resident of LeFlore county. Prosecutrix, Alice Nichols, was past 16 years of age. Her father and mother were both dead, and in June, 1938, she was living in the home of Mr. and Mrs. Stanley Stephens, who lived near Big Cedar in Le Flore county. That on the evening of the 17th day of June, 1938, defendant and one Jim Roberts, who owned a resort and dance hall, had been to Mena, Ark., and had secured some "records" which they desired that she and Mrs. Stephens go to the resort or "honky tonk" owned by Roberts and hear them

played. That they, in company with Jim Roberts, went to this resort about 5:30 in the afternoon, and defendant and Stanley Stephens came there about 8 o'clock in defendant's car. Some time near midnight defendant started home in his car with prosecutrix, Alice Nichols, and Mr. and Mrs. Stephens accompanying him.

There was evidence that they had been drinking and dancing, but prosecutrix testified she had drunk three or four drinks of brandy and no whisky. They had not gone very far from the resort until Mr. and Mrs. Stephens had a fight and Mr. Stephens slapped Mrs. Stephens. They proceeded a short distance, and the car stalled on a hill and the defendant asked Mr. Stephens to go to the home of Mr. Fields and secure a team to pull the car. Mr. Stephens had gone only a short way when he called his wife, and she left the car and joined her husband, leaving the defendant and prosecutrix at the car.

They informed Mr. Fields and had started toward the car when they heard the prosecutrix "hollar." When they arrived Mrs. Stephens testified that she asked what was the matter, and prosecutrix said, "Bill has almost beat me to death." That she got out of the car and she and prosecutrix left and walked to the home of Mrs. Luttrell, a distance of about three miles, and remained there overnight. That prosecutrix was bleeding at the nose and mouth, and that they stopped at creeks several times and washed the blood from her face. That she saw her undressed and put to bed by Mrs. Luttrell, and that there was blood all over her legs and thighs, but no wounds of any kind on her body. That she saw no blood from her "senile" organs.

Mrs. Luttrell testified to the same facts. That her clothes were bloody, and they were introduced in evidence. She also testified that she accompanied prosecutrix on

the next morning to see the county doctor and the county attorney. She did not take her to a doctor on the night she came to her house for the reason that it was eight miles to the nearest one. She testified prosecutrix was very bloody about the face, and that she saw blood and fingerprints on her thighs as she bathed her and put her to bed. Neither Mrs. Stephens nor Mrs. Luttrell testified that prosecutrix made any statement to them that defendant had attempted to have intercourse with her.

Prosecutrix, Alice Nichols, testified that she was asleep in the car when the Stephens went for Mr. Fields, and that the first thing she knew, "Bill had his hands up my dress and hitting me in the face when I hollared. He hit me in the face every time I hollared, and would make me shut up and hit me again, and so it wasn't long until Jean and Stanley came back and Stanley said, 'God damn, Bill, what are you doing?' and he didn't say a word and he just jumped in the front seat."

She further testified:

"Q. Is that what caused him to stop bothering you? A. Yes. Q. What was he trying to do with you there, was he trying to have intercourse with you there? A. I would judge it was. Q. Were you resisting? A. Yes, sir. Q. And you hollared and these parties came back? A. Yes, sir. Q. And when the man spoke to him and asked him what he was doing, what did he do? A. He leaped up in the front seat and grabbed his gun and sat down on it. Jean started to grab that and he got it and sat down on it. I don't think I told that in the other hearing. Q. What did you do then? A. Me and Jean got out and run on home."

Mr. Fields testified for the state, but his evidence was not material to the issues here involved.

Mr. Coy Morrow also testified for the state. He came with his car and pulled defendant's car up the hill after

prosecutrix and Mrs. Stephens had left the same. The only material part of his evidence was that defendant came to his house about 1:20 a. m. and woke him and asked him to come out, saying, "If I ever needed a friend, tonight is the night." He testified the defendant told him he had been shot and had to get away. He also testified that when he went to the car, he examined it and told defendant he wasn't shot and defendant said to him, "A lady asked me to get my pants unbuttoned and, like a man, I took a drink or two too many and made a mess of things." Stanley Stephens was not present at the trial and did not testify.

Defendant was the only witness in his own behalf. He corroborated to a great extent the evidence heretofore stated with reference to being present at the resort. He also testified that the parties had been drinking and that they continued to drink from a bottle when they started home. After the fight between Mr. and Mrs. Stephens the women were crying and tried to get him to give them his gun so they could kill themselves. He was a constable and justice of the peace and had a gun in a scabbard on his right hip. He talked them out of this and refused to give them the gun. He testified that he was asleep at the wheel of the car while the Stephenses had gone for help and that he was awakened by the prosecutrix trying to secure possession of his gun. That a fight ensued between himself and prosecutrix, and that he hit her two or three times in the face, causing her nose to bleed freely. He testified that, just as soon as he recovered the gun from prosecutrix, the Stephenses reappeared as above stated, and that the prosecutrix and Mrs. Stephens left immediately. He denied that he at any time attempted to have intercourse with prosecutrix or that he laid his hands upon her other than to strike her as stated above.

Applying the facts as above outlined to the law as heretofore stated, we are of the opinion that the court erred in failing to charge the jury upon the question of assault and battery, which is an included offense under the statute of which defendant stood charged. Under defendant's testimony he was guilty of assault and battery and not of assault with intent to rape. He was entitled under the law to a clear-cut instruction covering his defense and the only defense which he made. The evidence of the prosecutrix herself as to his attempt to commit an assault with intent to rape was very slight. She made no statement to the Stephenses when they returned to the car that he had made such an attempt. Her statement was that "Bill had almost beat her to death." Her testimony with reference to his attempt to have intercourse has heretofore been stated.

It is true there was evidence at the trial of circumstances, together with evidence of the prosecutrix as above indicated, that would have justified the jury in believing there was such an intent on the part of defendant. The verdict of the jury, which was only for a fine of $100 and 90 days in jail, is strongly persuasive that the jury did not consider that an attempt to rape had been committed, but rather that defendant was being punished for the assault and battery made upon the prosecutrix. It clearly indicates that, had the court properly charged the jury upon assault and battery as an included offense giving the punishment prescribed therefor, the jury would have convicted the defendant upon that charge.

Our Code of Criminal Procedure, Oklahoma Statutes 1931, section 3097, 22 Okla. St. Ann., § 916, provides:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

In the case of Brockman v. State, 60 Okla. Cr. 75, 61 P. 2d 273, 277, this court has had occasion to consider this statute, and there says:

"Under the statute, the trial court should submit the case to the jury for consideration upon every degree of assault which the evidence in any reasonable view of it suggests, and the instructions given must be applicable to the testimony introduced on the trial.

"In the case of Tayrien v. State, 33 Okla. Cr. 231, 242 P. 1061, 1063, it is said:

" 'The rule is well settled that where there is evidence tending to prove the commission of an offense which is necessarily included in the offense charged, it is error for the trial court to refuse to instruct the jury of their right to convict of the lesser offense. Clark v. State, 6 Okla. Cr. 100, 116 P. 200.

" 'In Alexander v. State, 58 Tex. Cr. R. 621, 127 S.W. 189, the Texas Court of Criminal Appeals said:

" ' "If the appellant took hold of the girl or put his hands upon her in a violent manner, yet if he did not have the specific intent at the time that he took hold of her to have intercourse with her either with or without her consent, then he would only be guilty of indecent familiarity, which, under the law, would be aggravated assault.

" ' "Believing that the court was in error in not submitting the issue of aggravated assault to the jury, the judgment will be reversed."

" 'In State v. Powers, 181 Iowa, 452, 164 N. W. 856, the Supreme Court of Iowa held:

" ' "In a prosecution for assault to rape, evidence being sufficient to sustain verdict for assault and battery, that issue should have been submitted."

" 'In State v. Hoag, 232 Mo. 308, 134 S. W. 509, the Supreme Court of Missouri said:

" ' "The complaint of the defendant that the trial court erred in failing to give the jury an instruction on

the law of common assault seems to us to be well taken. The crime of common assault is necessarily embraced in the charge of felonious assault. * * *

" ' "If the jury believed the evidence of prosecutrix, and yet, from the surrounding circumstances, did not believe defendant intended to have sexual intercourse with her at the particular time when she testified that he placed his hands under her clothes, then clearly they would have been justified in finding him guilty of common assault. When, as in the case at bar, the evidence shows that a defendant may not be guilty of the offense charged, but may be guilty of an offense necessarily embraced in the charge, it becomes the duty of the trial court to instruct the jury upon such minor offense whether it be requested to do so or not. * * * For the error of the trial court in failing to instruct the jury on the law of common assault, as applicable to the evidence in this case, its judgment is reversed, and the cause remanded for a new trial."

" 'And see State v. Langston, 106 Kan. 672, 189 P. 153; People v. Garner, 211 Mich. 44, 178 N. W. 75; Smith v. State, 150 Ark. 193, 233 S. W. 1081; State v. Williams, 185 N. C. 685, 116 S. E. 736, 738.'

"In Rose v. State, 32 Okla. Cr. 294, 240 P. 754, 755, it is said:

" 'The prosecutrix being above the age of 18 years, a consideration of statutory rape is not necessary, for, if the defendant attempted to commit a rape, it must be rape by force, under the fourth subdivision of section 1834, Comp. St. 1921 (section 2515, St. 1931, 21 O. S. 1941 § 1111). This section of the statute defines rape as an act of sexual intercourse accomplished with a female, not the wife of the perpetrator where she resists, but her resistance is overcome by force and violence. Then, in order to constitute the crime of attempt to commit a rape, it is essential that the state prove that the defendant attempted to accomplish an act of sexual intercourse with the prosecutrix by force and violence to overcome her resistance, and the doing of some act toward the commission of such crime, but failed or was

prevented or intercepted in the perpetration thereof. An attempt is defined in section 2297, Comp. St. 1921 (section 1822, St. 1931, 21 O. S. 1941 § 42). In order to convict a defendant of an attempt to commit rape upon a female above the age of 18 years, there must be proven a specific intent to use the force necessary to accomplish such purpose, notwithstanding the resistance of the female, and also some overt act. When the evidence proves no more than solicitation to have sexual intercourse and a technical assault while urging such solicitation, it is insufficient.' "

After a careful consideration of the facts and the law as applied thereto, we have come to the conclusion that this case should be reversed and remanded for the reasons above stated, and the county attorney of Le Flore county is directed to take such action as he deems advisable in accordance with the terms of this opinion.

JONES and DOYLE, JJ., concur.