Charles Lee **DIXON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–507.

Court of Criminal Appeals of Oklahoma.

Jan. 29, 1976.

Max M. Berry, Ponca City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Joe Mark Elkouri, Legal Intern, for appellee.

OPINION

BLISS, Judge:

The appellant, Charles Lee Dixon, hereinafter referred to as the defendant, was charged, tried before a jury in a two-stage proceeding and convicted in the District Court of Kay County, Oklahoma, Case No. CRF–74–51, for the crime of Assault With Intent to Commit Rape, After Former Conviction of a Felony. Punishment was assessed at a term of seven (7) years in the custody and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in conformance with the verdict the defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows: The prosecuting witness, a 34 year old wife and mother, testified that on the 17th day of April, 1974, she decided to go by the Dixon home in Kay County to have coffee with the defendant's wife. When she arrived the Dixon's next door neighbor, Neva Burnett, was sitting on her front porch. After a short visit with Mrs. Burnett the prosecuting witness went next door to the Dixon home where Mrs. Dixon invited her in to have coffee while she fixed breakfast. Once breakfast was fixed the defendant joined them at the table. After the meal the defendant told his wife to clear off the table. He then proceeded to unzip his pants, pull out his penis and urinate upon the table. Deeming this sufficient reason to excuse herself from the table the prosecuting witness got up and went into the kitchen where the defendant grabbed her by the breasts from behind and tried to force her into the adjoining bedroom. The witness tried to resist and was hit on the back of the head by the defendant. During the altercation the following transpired:

"Q. What was he trying to do?

A. He was trying to get me in the bedroom.

Q. How do you know that?

A. Because he told me. He says, I want you for a long time and I am going to get you if I have to knock you out and drag you.

Q. Did he ever tell you what he had in mind other—

A. He said—

Q. —other than that?

A. —I want you in the bedroom and I want you to—even if you play with it, I want you to do that.

Q. He said what now?

A. He said, I want you in the bedroom, even if you just play with it.

Q. What did you do after he told you that?

A. I said, you are not about get me in that bedroom. And then that just me him more belligerent or more determined. And he said, I am going to count to three and by three you had better get in there and—"

Seeing that the kitchen only had two doors, the one to the bedroom and one which the defendant was blocking, the prosecuting witness leaped out of the kitchen window, glass and all, to safety. She then ran to Mrs. Burnett's home. The police were called and she was then taken to a doctor where she received approximately seven stitches in her shoulder.

Neva Burnett then testified that on the morning in question she had coffee with the prosecuting witness and that the witness then went next door to the Dixon's. The next time she saw the prosecuting witness she was crying, asking for help and bleeding. Mrs. Burnett called the police and when they arrived she went to the Dixon home and observed that a window had been broken out, that there was blood

on the window and that there was broken glass on the ground outside the home.

Kay County Deputy Sheriff Bill Stieber then testified that he arrived at the Dixon home shortly after receiving a call from Mrs. Burnett. He noted that the prosecuting witness had quite a bit of blood on her person and that a kitchen window had been broken out and there was glass on the ground. He further stated that he advised the defendant of his Miranda rights and that the following transpired:

"Q. What conversation took place?

A. Well, he said that he and his wife were there in bed and (the prosecuting witness) had came over. And that they were in the kitchen, I think, he had ate breakfast. And he stated to me at the time that he didn't know why but (the prosecuting witness) had jumped through a window?

Q. He said that he didn't know why?

A. Yes

Q. Did he tell you anything about what had taken place prior to her jumping through the window?

A. He stated that they were talking about sex at the time."

The State then rested, the defendant demurred to the evidence and then rested.

After closing argument the jury returned a verdict of guilty as to the first stage of the proceeding. The State then presented evidence of the defendant's three former felony convictions. The State and defendant then rested and the jury assessed punishment as set out above.

The defendant contends that the evidence presented by the State was insufficient to show felonious intent to rape. In support of his contention, defense counsel argues that the uncontradicted testimony of the prosecuting witness indicates that the defendant's passions would have been gratified short of sexual intercourse and that the defendant did not intend to rape

the prosecuting witness notwithstanding any resistance she might make.

In *Garrison v. State,* Okl.Cr., 473 P.2d 341, this Court, citing *Matthews v. State,* 91 Okl.Cr. 285, 218 P.2d 393, held as follows, to-wit:

"It is seldom that a case can be found where the court can, as a matter of law, determine from the evidence that the intent to ravish did or did not exist. Where the intent rests in inference to be deduced from the facts proven, its existence or nonexistence must be submitted to the jury for their determination."

██ In the instant case this Court cannot state as a matter of law that the defendant did not form the requisite intent when he grabbed the prosecuting witness, forced her towards the bedroom, hit her about the head and stated that he would give her until the "count of three". From the evidence it is apparent that the defendant could have intended to rape the prosecuting witness and, in an effort to weaken her resistance made the compromising statement set out above. It is also possible that the defendant formed the requisite intent and then decided otherwise. In either event it is our opinion in the instant case that the question of intent is a matter for the determination of the jury. Therefore, we cannot say as a matter of law that the State failed in its burden of proof.

██ However, the record reveals that the trial court failed to instruct the jury concerning the lesser included offense of assault and battery. The evidence presented by the State requires such an instruction whether requested or not. In *Easter v. State,* 74 Okl.Cr. 114, 123 P.2d 691, this Court, citing *Lumpkin v. State,* 5 Okl.Cr. 488, 115 P. 478, held as follows:

"That where this court is of the opinion, in the light of the entire record and the instructions given, that the court has failed to instruct the jury upon some material question of law and where accused has been deprived of a substantial right, the case will be reversed."

In the instant case it is our opinion that the defendant was deprived of a substantial right by the failure of the trial court to submit an instruction on the lesser included crime. The trial court's failure constitutes fundamental error and the judgment and sentence appealed from must be and the same is hereby reversed and remanded for new trial under proper instruction.

In passing, we observe the Judgment and Sentence in the original record does not conform to the verdict as the "After Former Conviction of a Felony" portion of the verdict, through apparent inadvertence, was not reflected upon the copy of the Judgment and Sentence.

BRETT, P. J., and BUSSEY, J., concur.