TOM PHILLIPS v. UNITED STATES.

No. 70. Opinion Filed September 7, 1909.

(103 Pac. 861.)

1.  APPEAL—Case-Made—Rulings on Instructions. Where the case-made does not contain a copy of the instructions of the court to the jury, a statement, contained in a motion for a new trial, purporting to give such instructions, will not supply the omission; and alleged errors in the instructions given, or to the refusal of the court to give instructions requested, will not be considered on appeal.

2.  HOMICIDE—Appeal—Sufficiency of Evidence—Assault With Intent to Kill—Shooting Into Crowd. (a) The rule is that, when there is any evidence in the record from which the jury could legitimately draw the conclusion of guilt, a conviction will not be set aside upon the ground that the verdict is not supported by the testimony.

    (b) When a person fires a gun into a crowd, not caring whom he may kill, with the intention of killing some one of them, it is an assault with intent to kill each one of them.

(c) For facts constituting an assault with intent to kill, when the defendant fired a Winchester into a crowd, although no specific intention was proven to kill the particular person who was wounded by such shot, see facts stated in the opinion.

(Syllabus by the Court.)

*Appeal from District Court, Pittsburg County; Preslie B. Cole, Judge.*

On May 7, 1907, Tom Phillips (hereinafter called the defendant) was indicted by the grand jury of the Central district of the Indian Territory, sitting at South McAlester, for assault to kill. The case was transferred to the district court of Pittsburg county upon the incoming of statehood. The defendant was tried and convicted on said indictment in said state court, and the case is regularly before us on appeal. Affirmed.

*A. S. McKennon,* for appellant.

*Charles L. Moore,* Asst. Atty. Gen., for the United States.— On offense of shooting into crowd: Wharton on Criminal Law (10th Ed.) §§ 319, 608; *Jennings v. U. S.* (Ind. T.) 53 S. W. 456.

FURMAN, PRESIDING JUDGE. First. The case-made does not contain the instructions of the court to the jury. The motion for a new trial does set out what is claimed to be the instructions given. From the high character of the counsel for the defendant, we are satisfied that the instructions were copied correctly in the motion for the new trial; but we are without power to consider any objections to the instructions given, or to pass upon the instructions requested and refused, unless they appear properly in the record. It would be a most dangerous precedent to establish to pass upon such questions as these from statements contained in a motion for a new trial. The instructions themselves should be incorporated in the case-made, or presented by a transscript of the record; and it must appear by the certificate of the judge or the attestation of the clerk that they are a true and correct copy of the instructions given, or requested and refused,

as they appear of record in the trial court. Owing to this defect in the case-made, we cannot pass upon any question relating to the instructions given or to the instructions requested and refused.

Second. The only question that we can consider is as to the sufficiency of the evidence to sustain the verdict. The following is a condensed statement of the evidence introduced upon the trial:

"Defendant married the daughter of Ben Thompson. They had been separated for several months; the defendant then living with Man Hatridge, about 2½ miles from Thompson's. On Saturday evening, January 26, 1907, a number of young people assembled at said Thompson's residence, near Blanco, now in Pittsburg county, Okla., to have an Indian dance; all being Indians. Some eight visitors, defendant among them, all took supper and then built a fire in the yard, and began the dance there. Defendant led the dance. Thompson had four children, three girls and one boy—the youngest, Maggie, 13 years old—all of whom were in the dance. Defendant led the dance. About 8 or 9 o'clock, a boy named Silman Moore, who was in the dance, said in fun, 'I am about drunk.' Defendant said, 'Is it?' and when Moore came around defendant struck him very hard in the breast with his fist. Thompson came out and said to defendant: 'I wish you would not have anything like that. I want it to have all the fun you can.' Defendant shook his head and went off. About midnight the dancers were in about a half circle, holding hands, dancing around the ring, when a gun fired about 30 yards away. Maggie 'hollowed' and sat down. Her older sister was holding her hand, and looked around, and saw defendant going away. Both bones in Maggie's right leg were broken just below the knee by a gun shot. Silman Moore was beyond Maggie from where the gun fired, and a little to her left. Defendant had some week or ten days before this bought a 38 Winchester rifle from Press Wood, who lived about a mile and a quarter from Thompson's, and left the gun with Wood until he would call for it. He went that night to Wood's house to get the gun, about 10 o'clock, and Wood asked him if he had been or was about to get in trouble; and he said, 'No,' that he wanted to kill a wolf next morning. The next morning defendant carried the gun back to Wood's before sunup; said he did not go home that night. Defendant went

into his home at Man Hatridge's on Sunday evening, and in the first part of the week Hatridge heard they were making up a mob and were going to mob defendant, and he told him, if he was guilty, he had better be hitting the road, or preparing to do something, or he was going to get into it. Defendant said he was sorry, and would not have done the shooting except that he was drunk; that he drank one or two bottles of Peruna Saturday evening; that he would pay all doctor's bills and expenses. Maggie Thompson testified that she and defendant were friendly at the time of the trouble."

The rule is that, where there is any evidence in a case from which the jury could legitimately draw the conclusion of guilt, a conviction will not be reversed upon the ground that the verdict is not supported by the evidence. If the woman shot had died, beyond all question it would have been murder under the United States law, then in force in the Indian Territory. The contention that the defendant was so drunk as not to know what he was doing, and that he was incapable of forming any intention to kill, is without support in the evidence. The only testimony which even suggests the idea that the defendant was drinking is his self-serving declaration, made some days later, that he was drinking, and the statement that he was sorry. This evidence was clearly incompetent, and should not have been admitted. Every criminal is sorry, when he finds that he will be prosecuted for his crime. No one who was with the defendant the night of the shooting testified that he was drunk. The defendant left the dance, and went a mile and a quarter after the gun with which he did the shooting, and, upon being asked if he was about to get into trouble, said, "No," but he wanted to kill a wolf the next morning. These things show conclusively that the defendant knew what he was doing and that he acted with deliberation, and was so bent on his deadly purpose as to divert suspicion from his intention, so as to prevent interference which might prevent its accomplishment. No man who is so drunk as to lessen his responsibility for what he does ever acts in this way. There is no escaping the conclusion that the defendant was legally responsible for his

conduct when he fired the shot for which he is now being · prosecuted.

The defendant deliberately fired a Winchester into a crowd, who were bent only on enjoying themselves. He did not care whom he killed. Under the common law, which governed in murder cases in the Indian Territory at the time of the commission of this offense, this act would have constituted murder if any one in the crowd had been killed by the shot.

Mr. Wharton, in the tenth edition of his great work on Criminal Law, at section 319, says:

"When an action unlawful in itself was done with deliberation, and with intention of killing or inflicting grievous bodily harm, though the intention be not directed to any particular person, and death ensues, it will be murder at common law; though if such an original intention does not appear, which is matter of fact, and to be collected from circumstances given in evidence, and the act was done heedlessly and incautiously, it will be manslaughter, not accidental death, because the act upon which death ensued was unlawful. Thus, if a person breaking in an unruly horse wilfully ride him among a crowd of persons, the probable danger being great and apparent, and death ensue from the viciousness of the animal, it is murder at common law. If, also, a man recklessly and maliciously throw from a roof into a crowded street, where passengers are constantly passing and repassing, a heavy piece of timber, calculated to produce death to such as it might strike, and death ensue, the offense is murder at common law. It is also murder to kill by firing maliciously into a crowd, or by maliciously putting an obstruction on a railway track. And, upon the same principle, if a man, knowing that people are passing along the street, maliciously throw a stone likely to kill, or shoot over a house or wall with intent to do serious harm, and one is thereby slain, it is murder on account of previous malice, though not directed against any particular individual. It is no excuse that the party was bent upon mischief generally."

In section 608, Wharton on Criminal Law, it is said:

"Recklessly shooting into a crowd is an assault and an assault on several indiscriminately is an assault on each individual."

In *Jennings v. United States,* 2 Ind. T. 670, 53 S. W. 456,

the United States Court of Appeals for the Indian Territory properly held that firing into a body of men indiscriminately, with the intention of killing some one of them, is an assault with intent to kill each one of them.

The above authorities are conclusive against the contentions of the defendant as to all of the objections raised by the defendant as to the instructions, given and requested and refused, which are contained in the motion for a new trial, even if such instructions were properly before us.

Finding no material error in the record, the judgment of the lower court is affirmed.

DOYLE and OWEN, JUDGES. concur.