# BILL STILES v. STATE.

No. A-8306.   March 4, 1932.
(9 Pac. [2d] 58.)

W. B. Allen, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error, for convenience hereinafter referred to as the defendant, was convicted of the crime of assault with intent to commit rape, and his punishment fixed at one year's imprisonment in the state penitentiary.   Motion for a new trial was filed, considered, overruled, and exceptions saved, and defendant appeals.

Alice Mountain, the prosecuting witness, in substance testified:

"My home address is 5036 East Ninth street, Kansas City, Mo.; I was 15 years old on April 7, 1930; on the

19th of February, 1931, I was visiting at the Pilgrim home about three miles southeast of Ramona, in Washington county, Okla.; Lucile Bailey and I went to Ramona about noon to get the mail; we were talking to Clarence Sizemore in the town of Ramona when Donald Mock drove up in a Ford coupe; Clarence got some cigarettes and we all smoked one; about the time the car was ready to start the defendant, Bill Stiles, came and got in the car; we drove southeast to what is known as the Twin Bridges, drank some whisky, drove back through Ramona and crossed the river, and drove into Nowata county to a place where Clark Warnell lived; after staying at Warnell's a short while, the defendant, Lucile Bailey, Donald Mock, and myself got in the car and drove toward Ramona and turned on a road leading northeast and crossed the river and came to an old vacant house, which one of the boys stated was where he lived; the defendant and I got out, and Donald Mock and Lucille Bailey went on down to the road crossing and turned the car around; the old house was vacant; the defendant put his hands on me while we were standing there together, and asked me if I was going to kick in, or something like that; I told him, no; we scuffled a little and fell on the ground with the defendant on top of me; the defendant did not at any time have intercourse with me. When we left the old house we drove to the little town called Oglesby, and drove around through the country there for some time and then went to Morris Green's place; Morris Green got in the car, and just before we got to Oglesby got out and left us; said he was going home; that left the defendant, Lucile Bailey, Donald Mock, and myself in the car; shortly after we got to Oglesby, three deputy sheriffs came in and arrested the defendant and took him to Bartlesville."

On cross-examination the prosecuting witness denied she told any one that she and Lucile Bailey had whisky with them. On redirect examination witness stated:

"The defendant got me down on the ground, but did

not even get my dress up; he had me down on the ground and started to unbutton his pants and a car came by and we got up; I don't know whether they saw him or not."

Lucille Bailey corroborated the prosecuting witness in her testimony as to their being in Ramona about noon on the day of the alleged attempted rape, and getting in the car with the boys whom they had never met before and driving to the country; about the defendant and Alice Mountain stopping at the vacant house; Lucile stated she did not know what took place at the house while she and Donald Mock went down the road to turn the car. She further corroborates the prosecuting witness about getting back in the car and driving around over the country, going to Morris Green's place, and Morris getting out of the car before they got to Oglesby; and also testified as to the arrest of the defendant and others in the town of Oglesby some time after dark in the evening after the alleged rape took place in the afternoon.

Clarence Sizemore corroborated the prosecuting witness as to the girls getting in the car at Ramona and driving away. It was further shown by Claud Watkins, who was driving the school bus, that he saw a boy and girl coming away from the old vacant house, but he did not know who they were. The state introduced further testimony as to the arrest of the defendant at Oglesby.

The testimony on behalf of the defendant tends to show he was not drinking about noon the day the alleged attempted rape took place in the afternoon. Donald Mock testified to meeting the girls in Ramona the morning of February 19, 1931—

"The girls asked my name, where I lived and where I was going, and I told them I was just running around; I did not invite them to get in my car, they just climbed in."

When the defendant came and got in the car and asked the girls where they wanted to go, they said, anywhere. The witness corroborated the girls as to the different places they drove before they got to the vacant house; witness also stated they stopped on the road so the girls could take a drink of whisky.

On cross-examination witness stated that when the girls got in the car they had a paper sack with something in it, which he later found was whisky; he did not know where they got it; witness did not know what took place between the defendant and prosecuting witness at the old house.

Mrs. Howard, who was in charge of a store in Oglesby, testified as to what took place the same evening the defendant was arrested. Other witnesses were called who testified to seeing the parties at different places during the day. The only witnesses who testified as to what took place at the old vacant house were the prosecuting witness and the defendant. The defendant, testifying in his own behalf, admitted being out with the prosecuting witness, Lucile Bailey, and Donald Mock. A great deal of conversation is detailed in the record which it is not deemed necessary to refer to in this opinion.

The defendant denies he put his hands on the prosecuting witness at the vacant house, and denies he pushed her down on the ground and got on top of her; he says she had fallen down and he assisted her to get up—

"I never did ask her if she was going to kick in, nor did I attempt to unbutton my pants; while we were on the trip the girls wanted to stop and have intercourse; I did not stop for the reason that I did not want to fool with them; I did not assault the prosecuting witness, nor did I make any effort to have sexual intercourse with her."

This is all the testimony it is deemed necessary to set out in this opinion.

Several errors have been assigned by the defendant as grounds for reversal. The first assignment urged by the defendant is that the court erred in overruling his demurrer to the information. After an examination of the record we find the information stated facts sufficient to advise the defendant of the charge against him and the demurrer was properly overruled.

It is next urged by the defendant that the court erred in refusing to give his requested instruction submitting to the jury the issue of the included offenses of assault and assault and battery, which instruction was refused and exceptions allowed. No instruction was given by the court on the question of assault, or assault and battery.

Section 2740, C. O. S. 1921, is as follows:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

The rule is well settled that where there is any evidence tending to prove the commission of an offense, which is necessarily included in the offense charged, it is error for the trial court to refuse to instruct the jury of their right to convict of the lesser offense. Clark v. State, 6 Okla. Cr. 100, 116 Pac. 200; Alexander v. State, 58 Tex. Cr. R. 621, 127 S. W. 189; State v. Hoag, 232 Mo. 308, 134 S. W. 509; Smith v. State, 150 Ark. 193, 233 S. W. 1081.

In Alexander v. State, 58 Tex. Cr. R. 621, 127 S. W. 189, 191, the Criminal Court of Appeals said:

"If the appellant took hold of the girl or put his hands upon her in a violent manner, yet if he did not have the specific intent at the time that he took hold of her to have intercourse with her either with or without her consent, then he would only be guilty of indecent familiarity, which, under the law, would be aggravated assault.

"Believing that the court was in error in not submitting the issue of aggravated assault to the jury, the judgment will be reversed."

See Tayrien v. State, 33 Okla. Cr. 231, 242 Pac. 1061.

After a careful consideration of the evidence and the decisions of the court in the foregoing cases, we are convinced that the court erred in refusing to give the requested instruction, and as the case may again be submitted to a jury it is deemed advisable not to discuss the evidence further than to say that if the theory of the defendant and his testimony is true, the defendant is entitled to have the jury instructed upon the included offenses. Believing the court erred in not submitting the issue of assault, and assault and battery to the jury, the case is reversed and remanded, with directions to grant a new trial.

CHAPPELL, J., concurs. EDWARDS, J., not participating.