### GEORGE BREWER v. STATE.

No. A-9299.   Jan. 21, 1938.
(75 P. 2d 901.)

E. H. Beauchamp, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and H. P. Walker, Co. Atty., for the State.

BAREFOOT, J. The defendant was charged in Craig county with the crime of larceny of domestic animals, was convicted, and sentenced to serve a term of four years in the penitentiary at McAlester, and has appealed.

The defendant was charged jointly with Connor Duncan, Elmer Duncan, Tom Carack, Blue Rogers, Lee Davis, and Max Monday with the larceny of seven head of cattle, the property of George Whittington. These cattle were located in a pasture belonging to Mrs. Coppedge in the Leach community, in Delaware county. They were stolen from this pasture some time in the month of February, 1935. One of the parties, Blue Rogers, indicted with defendant, turned state's evidence and testified for the state. His testimony was that he was acquainted with the complaining witness, George Whittington, and the defendant, George Brewer; that he also knew Connor Duncan and Max Monday; that he remembered the cattle stealing deal in the vicinity of Leach, in Delaware county in 1935; that he had a conversation with defendant and Connor Duncan about this transaction at Duncan's place on the afternoon of the day the cattle were stolen about 4 or 5 o'clock. He, in company with Connor Duncan and Elmer Duncan, went from Connor Duncan's place to George Brewer's home; that they there saw and talked with George Brewer about stealing the cattle from George Whittington. After the conversation they went up to the pasture where George Whittington's cattle were, it was dark and about 8 o'clock at night. This witness, George Brewer, and Connor Duncan drove seven head of cattle out of the field, and drove them to

the home of Connor Duncan; that they placed them in the barn, George Brewer, the defendant, assisting in the driving and helping to put them in the barn. They then went to the house and about 10 o'clock Max Monday, Arnold McClelland, and a truck driver named Lee Davis arrived. Max Monday and the truck driver lived in Siloam Springs, Ark., and Arnold McClelland was a neighbor whom they had awakened and had come to show them the way. Connor Duncan had called them, and when they arrived they went to the barn and looked at the cattle and bought them. They bought nine head, the seven head that had been brought by the parties and placed in the barn, and two head which were the property of Connor Duncan and were located in the lot adjoining the barn. Max Monday purchased the cattle and paid $86 for all of them, $60 for the seven head and $26 for the other two. The $60 was divided between Connor Duncan, the defendant, George Brewer, and the witness, each receiving $20. The $26 was given by Connor Duncan to his wife, the same being for the two head of cattle privately owned by him. This witness admitted that he was charged in the original information with this same crime, and that he talked to the deputy sheriff and the justice of the peace and they had agreed to assist him in getting a parole if he would come clean in telling the truth. He also stated that he told the county attorney his story. This witness was corroborated by witnesses, both for the state and the defendant, as to the presence of defendant at the time that the cattle were bought by Max Monday.

The witness Max Monday testified as follows:

"Q. Did you buy any cattle in Oklahoma about that time? A. Yes. Q. How many head? A. Nine head. Q. Where did you buy them? A. I bought them about one mile south and one-half mile west of Cole's store. Q. Is

that in the Leach community in this county? A. Yes, sir. Q. You remember who was present when that trade was made? A. Arnold McClelland, Lee Davis, Blue Rogers, Connor Duncan and Brewer. Q. Just state whether this defendant, George Brewer, was there? A. He was. Q. Who went with you to this place? A. Lee Davis, Arnold McClelland. Q. You bought nine head of cattle? A. Yes. Q. This man Brewer was preesnt when the deal was made? A. He was there. I bought the cattle from Mr. Duncan. Q. Was that in his presence? A. He was there. I wouldn't say for sure whether he was right present or not. He went outside."

Similar evidence was also given by Arnold McClelland and Lee Davis and also Connor Duncan and Blue Rogers.

The witness Arnold McClelland testified as follows:

"Q. Did you go with them down there? A. Yes. Q. Who was with them when you got there? A. Blue Rogers, Connor and George. Q. What happened after you got there? A. They went to trying to sell them the cattle when we got there. Q. The George you have reference to is the defendant? A. Yes, sir."

The owner of the cattle, George Whittington, testified as to the loss of the cattle and that they were located in Delaware county at the time of their loss, and then testified as follows:

"Q. Do you remember in the spring of this year, 1936 —sometime in April—having a conversation with this defendant, George Brewer? A. Yes. Q. Can you fix the date? A. It was sometime in February, or March. Q. Where was the conversation? A. The first conversation I had with him was down in my field, just me and him. I was down there plowing a little clearing. Q. Was that before this case came up in the spring or May term? A. Yes, sir. Q. Do you remember the substance of that conversation? A. Yes. Q. Tell the court and jury what it was? A. He came down there and asked me—I will tell

it as near as I can—he asked me if I had seen Jim Cop-pedge. I told him I had seen him the day before, for Jim told me he wanted to see me, but there were some other fellows there. He said I just thought I would come myself so there would be nobody to hear the conversation, only me and you. He said, I would like to get you to fix that up. I said what would you want me to do. He said fix it so I could get out on a straight parole. I said you know I don't have anything to do with that. He said you can help and can get the county attorney to do that. I said yes, I might but I wouldn't. Q. You know what he had reference to? A. Yes, these cattle we are trying to-day. And we talked there all day—oh for an hour any-way that day, and the next night he came to my place and we talked about it again. Q. Who was present then? A. Nobody, just me and him, and the best I can remem-ber I was up at the house and we talked again about it. Q. That same day? A. No that night, along the same conversation as to me agreeing to what I would do. Q. Then the next day where did you see him? A. I saw him the next day out in front of his house. I was passing there and he stopped me and in this conversation I re-lated to him what another party had told me. I told him Connor Duncan had told me he didn't know whose cattle they were getting, and George said 'we all knew whose cattle we were getting.' He said 'you know no-body would go in and get a bunch of cattle without know-ing whose cattle they were.' That was the conversation me and George Brewer had."

The defendant, in his brief, relies for reversal of this case upon his assignment of error "that the court erred in overruling the demurrer of plaintiff in error in the lower court to the state's evidence at the close of the state's testimony, on the grounds of insufficient testimony ad-duced on the part of the state in chief, for the reason that the testimony adduced in chief and upon which the state secured a conviction is the sole and uncorroborated testimony of an accomplice."

As urged by the defendant there is no question but that the witness Blue Rogers was under his testimony an accomplice of the defendant. He participated in the larceny and was given a part of the money received from the cattle which were stolen. Under the decisions of this court it has been universally held that a conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. It is not necessary in order to corroborate an accomplice, that the state should introduce evidence of complete proof of the crime, but there should be only some evidence of material facts in addition to the testimony of the accomplice, tending to connect the defendant with the commission of the crime charged. And when there is such corroborative evidence its weight and effect is a matter for the jury to determine. Oklahoma Statutes, 1931, § 3071 (Okla. St. Ann. tit. 22, p. 407, § 742); Frank Rice v. State, 60 Okla. Cr. 398, 64 Pac. 2d 1240; Smith v. State, 40 Okla. Cr. 88, 267 Pac. 283; Armstrong v. State, 39 Okla. Cr. 364, 265 Pac. 663; Morton v. State, 46 Okla. Cr. 361, 287 Pac. 1087; Campbell v. State, 12 Okla. Cr. 349, 157 Pac. 49; Martin v. State, 12 Okla. Cr. 510, 159 Pac. 940; Fortman v. State, 45 Okla. Cr. 23, 280 Pac. 1109. The question here presented is: Was the evidence sufficient to corroborate the witness Blue? We think it was. He was corroborated by witnesses for both the state and defense that he was present at the home of Connor Duncan when the cattle were purchased. Max Monday, who bought the cattle, Lee Davis, the truck driver, and a neighbor, Arnold McClelland, who went with them on the night that the cattle

were purchased, all testified to this fact. This testimony was also corroborated by Connor Duncan and Arnold McClelland. In addition to this testimony, Mr. Whittington, the owner of the cattle, testified that after defendant was arrested and while this information was pending against him he had two or three conversations with defendant. It will be noted that in this connection the defendant, by his own statements, said: " 'We all knew whose cattle we were getting.' He said 'You know nobody would go in and get a bunch of cattle without knowing whose cattle they were.' That was the conversation me and George Brewer had." The corroboration of an accomplice necessary to justify a conviction may be found in the testimony of the defendant, as well as that of other witnesses. State v. Lovelace, 29 Nev. 43, 83 Pac. 330; People v. Sullivan, 144 Cal. 471, 77 Pac. 1000; People v. Watson, 21 Cal. App. 692, 132 Pac. 836; People v. Tinnin, 136 Cal App. 301, 28 Pac. 2d 951; 16 Corpus Juris, p. 706, § 1440, and cases there cited; 12 Cyc. p. 458.

The judgment and sentence of the district court of Delaware county is affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.