Clarence Edward SMITH, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12064.

Criminal Court of Appeals of Oklahoma.

Dec. 22, 1954.

Henry Seaton, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

The plaintiff in error, hereinafter referred to as defendant, was charged jointly with one Billy Lee Mills in the district court of Tulsa County with the theft of a certain 1951 Oldsmobile automobile, the property of Robert A. Wesche. There-

after, on August 5, 1953, each of said defendants on arraignment entered a plea of not guilty.

On August 12, 1953, Billy Lee Mills withdrew his plea of not guilty and entered a plea of guilty, was sentenced to be imprisoned in the State Penitentiary at McAlester for three years, but the judgment and sentence was suspended during good behavior, and said Mills was released to the custody of the chief probation officer of Tulsa County.

The defendant Clarence Edward Smith did not change his plea but demanded a trial by jury, and his case came on for trial on October 15, 1953, and the jury returned a verdict of guilty and fixed the punishment of defendant at imprisonment in the State Penitentiary at McAlester for a term of three years.

The case is here on appeal.

Billy Lee Mills, the defendant's accomplice, testified for the State. The question determinative of the appeal is whether or not there was sufficient evidence to corroborate the testimony of the accomplice.

Mills related the prior actions of himself and the defendant in drinking beer and whiskey, and certain conversations culminating in an agreement for the stealing of an automobile to enable them to make a trip to Wichita, Kansas. He said they went to the room of the defendant in the Broadmore Hotel, Tulsa, for the purpose of changing clothes, and that as they went into the hotel and up to the room of the defendant "he [defendant ] hollered at the lady that owned the place and said something about going upstairs a minute or two, I don't remember the exact words."

The hotel room in question was shown to overlook the parking lot from which the car involved was stolen. Witness stated that he and Smith looked out of the hotel window and saw the car that they decided to take. He said they decided to get a car out of this particular parking lot because Smith knew that the attendant would leave the lot at about that time of the afternoon, and it would not be attended. Witness further testified:

"A. Well, we went around back to the Missouri Bar and drank some more beer and he [defendant] got some money from his wife—he got some money from her, four or five dollars, I don't know how much it was, and she was going to work at that time and when she went to work we left and went outside. And then the fellow walked up the street and we went around and I got in and tried to start the car and I couldn't start the car, and he got in and tried to start it, and I think I tried again, and he got out, and he tried it again, and finally we got it started, we tried three or four times before it started.

"Q. Who drove it off the lot? A. He drove it off of the lot.

"Q. Did you know whether or not it was his car? A. Well, yes, sir, I knew it wasn't his car.

"Q. Well, did you represent to him that it was your car? A. No, sir.

"Q. Do you know whether or not he had permission to take that car? A. I knew he didn't have permission, yes sir.

"Q. Did you have permission to take it? A. No, sir."

Witness stated that as defendant drove away accompanied by witness, that the defendant's wife was observed standing in front of the Missouri Bar, a place where she was employed. Witness further stated that they drove through Sand Springs and headed for Wichita, that they took turns in driving and they continued to drink whiskey; that before they got to Ponca City defendant wanted to get in the back seat and go to sleep; that defendant was then drunk; that witness drove into the outskirts of Ponca City, stopped the car and both of them went into a field and drank some more beer, and witness went to walking up the road to a tourist cabin but the officers arrested him. The officers then brought him back to where he and defendant had parked the car. That it was before midnight, that defendant was not at the car and witness admitted that he had been convicted for grand larceny

and burglary, and had spent a year in a reform school and had been arrested for being drunk. The jury of course were entitled to hear this in determining the weight to give the evidence of this witness.

Was the testimony of Billy Lee Mills sufficiently corroborated so as to support the verdict and judgment?

Bertha Rich, the manager at the Broadmore Hotel, testified that on the afternoon of July 16, 1953 Clarence Smith, who roomed at the hotel, came in around four or four thirty accompanied by a young man she later found out was Billy Mills. Said she: "When he come up stairs I had just finished talking on the telephone and he said, 'Bertha, this boy is going upstairs with me for a minute', and they went upstairs and I didn't see them any more". This witness further testified that Smith's room overlooked a parking lot on First and Cincinnati, and that he and his wife had lived at the hotel about two months.

Robert A. Wesche testified to the ownership of the 1951 Holiday Oldsmobile coupe involved. He stated that he parked his car in the parking lot in question about three o'clock in the afternoon on July 16, 1953, leaving the keys in the car so that the attendant could move it, and that he returned for his car about five thirty-five or five forty, and it was gone. He reported the theft to the police department. He stated that he received a call from the police department about twelve thirty that night reporting the recovery of the car at Ponca City, and he went to Ponca City and identified his car. He further stated that he was not acquainted with the defendant, and had not given him or anyone else permission to obtain his car from the parking lot or drive it anywhere.

Norman Cofelt of the Ponca City police department testified that on the night of July 16, 1953 he had occasion to take into custody a 1951 Oldsmobile Holiday coupe; that the Ponca City police department received a call that the car containing two men was parked on the side of the road in the 500 block of Fourteenth Street south; that three officers responded to the call and one drove the car to the police station. No one was at the car when the officers arrived, but the officers, prior to arriving at the place where the car was parked, found Billy Lee Mills (who testified for the State) walking along the street about a block north of where the car was parked. They did not find the defendant Smith at the time they found the car. They arrested Mills.

Haus Alexander, policeman of Ponca City, testified that he had been looking for a described man wanted in connection with the larceny of the 1951 Oldsmobile Holiday coupe, found the night of July 16 parked on a street of Ponca City, and about eight o'clock on the morning of July 17, 1953, he saw the defendant about a half mile south of Ponca City on Highway 77, and questioned him. That Clarence Edward Smith told him that he came to Ponca City from Tulsa in the car in question; that he then arrested the defendant and took him to the Ponca City police station. Witness further testified that the defendant told him that he came over from Tulsa in the Oldsmobile with Billy Lee Mills. Witness testified as follows:

"Q. What was his condition at the time you took him into custody? A. Well, I'd say he had been drunk for some time and he wasn't in too bad a shape at that particular time, but he had been drunk, that would be my idea, he was trembling and shaking and from my experience with drunks the morning after, I'd say he was or had been drunk.

"Q. Did you learn from him whether or not he had someone with him the night before in that automobile? A. Yes, sir.

"Q. Did he tell you who that was? A. Yes, after a certain he told me it was Billy Mills."

On cross-examination officer Alexander said that the defendant told him the reason he abandoned the car was that he found out that it was stolen, and "took off", and had started back to Tulsa. He said they had tried to steal some license plates. The defendant said he walked about 300 feet from where the car was left and got under a sign board there and stayed there until he got cold, and then crawled in an old automobile and went to sleep. Witness testified

that defendant told the officers he was going to Wichita to look for work.

The defendant did not testify, but his wife Edna Lee Smith did. Her testimony had the effect of further corroborating the testimony of the accomplice Mills, in that she testified that Mills and her husband were planning to make a trip to Wichita, but that Billy Lee Mills pointed out the yellow Oldsmobile in which the trip was later made. She said that Mills claimed to be the owner of the car, and that at the time of this conversation they were standing by the parking lot railing on Cincinnati Street, and that they later left separately from the bar where she worked.

John W. Prince testified for the defendant. He stated that at about five or five thirty on the afternoon of July 16, 1953 he was standing on the corner of First and Main Streets in Tulsa, talking with the defendant, and a yellow or cream colored car drove up, and the defendant said: "Mr. Prince, I'll see you in a few days"; and further, "I'm going to Wichita, Kansas to see about getting me a job". Witness further testified that he had known the defendant for a year and had seen him "every day for a year", while the wife of the defendant testified that they had moved to the Broadmore Hotel in May, 1953, which was approximately two months before the larceny of the automobile, and five months before the trial in the district court, and that prior to that they had been living in California.

Witness Prince further testified that it was "about a week ago" that he saw the defendant get into the car with another man and drive away, whereas the larceny of the automobile occurred three months prior to the trial.

The contention that the testimony of accomplice Billy Lee Mills was not sufficiently corroborated in the light of the evidence recited must fail, as we conclude that the evidence meets the test set out and treated in Taylor v. State, 90 Okl.Cr. 283, 213 P.2d 588, 589, and cases cited, where this court said, in paragraphs 3, 4, 5 and 6 of the syllabus:

"Evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime; it is sufficient if it tends to connect him with its commission.

"Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime need not be direct, but may be circumstantial only.

"Where there is evidence in corroboration of an accomplice tending to connect a defendant with the commission of the crime charged, the sufficiency of such corroborating evidence is for the jury.

"Where the sufficiency of the evidence to corroborate an accomplice is challenged, this court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict."

In Woody v. State, 95 Okl.Cr. 21, 238 P. 2d 367, 373, in the body of the opinion it was said, in part:

"This court has held that it is not necessary that the corroborating testimony be complete, independent proof of the crime, but if an accomplice's testimony is corroborated in part, the jury is then justified in believing the acomplice's entire story to be true."

The judgment appealed from is affirmed.

JONES and BRETT, JJ., concur.