Larry **PARROTT**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–73–255.

Court of Criminal Appeals of Oklahoma.

April 9, 1974.

Rehearing Denied May 28, 1974.

Burke Mordy, Ardmore, for appellant.

Larry Derryberry, Atty. Gen., Robert McDonald, Asst. Atty. Gen., William Thiebaut, Jr., Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Larry Parrott, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Carter County, Case No. CRF–71–161, for the offense of Burglary Second Degree; his punishment was fixed at three (3) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Chris Gers testified that on August 7, 1971, he was employed as the golf professional at Dornick Hills Golf and County Club which was located north of the City of Ardmore, Oklahoma. He indicated that his duties as golf pro included the operation of the golf shop which was a retail outlet for golf merchandise and other general athletic items. Mr. Gers testified that the building that housed the golf shop was secure when he left it on the evening of August 6, 1971. He further testified that he received a call early in the morning of August 7, 1971, notifying him that a window had been broken out of the golf shop. Upon going to the scene around 2:30 that same morning, he discovered that the window upstairs above the pro shop in the ladies locker room had

been broken out and a glass pane had been knocked out of an interior door within the building.

Jimmy Stewart testified that on the night of August 6, 1971, he met the defendant at a bar in Ardmore. He indicated the two of them left in his 1965 Chevrolet, bearing license tag number CE–3910, and went to another bar where only the defendant went in and after a short period of time came back out to the car with Billy Ray Marr. The three of them then left the club together in Stewart's car, purchased some whiskey and cokes and then, while drinking, started driving to another club. While enroute, Stewart indicated that he turned off at Dornick Hills and drove past the country club. Stewart testified that Billy Ray Marr stated that the building at the club looked like it would be easy to get into. He further testified that he stopped his car and let the defendant and Billy Ray Marr out of the car. He then drove his car up to the parking lot and stayed in it. While he was sitting in the parking lot, Stewart indicated that Wayne Warthen, Criminal Investigator for the District Attorney's office, Twentieth Judicial District, came by and shined his spotlight on his license tag. Shortly thereafter, the defendant and Marr came back to the car and Marr stated, "We got into the building." As they were leaving, Stewart testified that the defendant stated, "I've got to go back. . . we've got to go back and get our fingerprints off that glass." Stewart also testified that as they were leaving they were pulled over by the police.

Ed West testified that he was a detective with the Ardmore Police Department, and that he was so employed on August 7, 1971. He testified that on that date he responded to a call concerning an alleged breakin at the Dornick Hills Golf and Country Club. His testimony was substantially the same as that of Chris Gers. He further testified that while he was at the scene he dusted the area for fingerprints. He indicated that he later had a conversation with the defendant at the county jail and at the time of that conversation he advised the defendant of his rights and also told him that he had dusted for and picked up some prints at the scene.

Wayne Warthen testified that he was a Criminal Investigator for the District Attorney's office. He stated that during the early morning hours of August 7, 1971, he was in the area of the Dornick Hills Country Club and that he observed a 1965 Chevrolet pass in front of him with three subjects in it. He further testified that as he drove toward the country club he met the same car again with the three subjects inside. He indicated that he next saw the car parked in the Dornick Hills Golf and Country Club parking lot about 75 yards from the pro shop. He then drove into said parking lot and copied the license number from the vehicle parked there and the number was verified as that of the vehicle owned by Jimmy Stewart. Warthen further testified that the defendant had asked him if Ed West and Dean Plank were qualified to lift fingerprints, and also stated that he (the defendant) did not think they were qualified and not being qualified they could not testify against him concerning any fingerprints.

Dale Phillips testified that he was a patrolman with the Ardmore Police Department on August 7, 1971. His testimony indicated that on the date in question he received a call to go to the Dornick Hills area to check on a suspicious vehicle bearing license tag number CE–3910. He indicated that as he proceeded to the area, he met the described vehicle. He turned around, caught the vehicle and pulled it over. He stated that there were three people in the automobile and Jimmy Stewart was identified as the driver.

Merle Salthouse testified that he was Deputy Sheriff of Carter County. He testified that he was with the defendant in January of 1973, and at that time he advised the defendant of his rights. He further testified that at the same time, the defendant indicated that he had previously

been advised of his rights. Following a Jackson v. Denno hearing as to voluntariness, Salthouse testified that as he was bringing the defendant back from Love Field in Dallas, Texas, to the Carter County jail, the defendant stated, ". . . I'll probably get twenty-five years off of this." He also indicated that the defendant said, "I was in the building . . . I didn't take anything, they can't put a burglary charge on me for not taking anything."

Joe Litchfield testified that he held a Deputy Sheriff's commission in Carter County and that he occasionally assisted the Sheriff's and District Attorney's offices in routine matters. The witness indicated that he, along with Wayne Warthen, picked up the defendant in Klamath Falls, Oregon. He further testified that Warthen advised the defendant of his constitutional rights at Klamath Falls. Litchfield further testified that the defendant stated several times that he did not want to go to the penitentiary for breaking a two dollar window. He also stated, in response to a statement made by him, that he considered the defendant innocent until proven guilty, the defendant stated, "Well, I'm guilty, I did break the two dollar window, but I didn't steal anything. I just couldn't get the door open." The witness testified that at the time the defendant made these particular statements to him, they were on a commercial airliner and the defendant had had at least one, but not more than three, alcoholic beverages. Litchfield indicated that he did not feel that the defendant was intoxicated at any time during their return.

Joyce Hughes testified that on August 7, 1971, she was going with the defendant and that the defendant came to her home on the morning of August 7th. She testified that she had seen the defendant with Jimmy Stewart the night before, and that when the defendant came to her home on that morning that he was drunk.

Billy Ray Marr testified that he was presently in the custody of the Department of Corrections and that he had five previous convictions, plus a parole violation. His testimony reflected that of Jimmy Stewart. Marr indicated that at the country club he got out of the car and asked the defendant to come with him. Upon asking a second time, the defendant got out of the car and went with him. He further testified that he climbed up on the roof of the pro shop and broke out a window. He stated that the defendant was, at first, hesitant, but then agreed to enter the shop and he assisted the defendant up on the roof and the two of them entered the building. He then testified that the two of them went downstairs and he attempted to break in another door. He indicated that he was unable to break the second door and the defendant left the building and he followed. He also testified that he entered the building with the intention of stealing anything that he could find, although he actually did not take anything. Marr further testified that the defendant was drunk at the time they entered the building.

■ It is argued by defendant, in his first proposition of error, that the trial court erred in overruling his Motion for Mistrial made during the voir dire examination of prospective jurors. This Court notes that the burden of establishing that the prospective jurors' statements were prejudicial to his rights is placed upon the defendant. Rooks v. State, Okl.Cr., 417 P.2d 939 (1966). This the defendant has failed to do. The trial record reflects numerous admonishments during voir dire and throughout the trial, to the jury to disregard any statements not in evidence. In McCormick v. State, Okl.Cr., 464 P.2d 942 (1969), this Court stated:

"It is fundamental that in passing on a Motion for Mistrial the finding of the trial court will not be disturbed in the absence of evidence that it abused its discretion."

We find no abuse of discretion by the trial court and accordingly, we find this assignment of error to be without merit.

■ Defendant urges, in his second proposition, that the trial court erred in

permitting into evidence certain statements made by the defendant following consumption of alcoholic beverages. Defendant further urges that it was error for the law enforcement officer to fail to advise the defendant to discuss the matter with his attorney prior to making any statement. Prior to the admission of the testimony relating to statements made by the defendant, the trial court conducted a full hearing concerning the voluntariness of these statements, out of the presence of the jury, in accordance with the guidelines set forth in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The results of this hearing indicate that the defendant had been fully advised of his constitutional rights, including the right to presence of counsel, less than one hour before the defendant made his statements. The record also shows that defendant's statements were not elicited by the police officer, nor were they the result of police custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 2694 (1966). The record further indicates that the defendant was well aware of the Miranda warnings and understood their provisions. Defendant asserts that the police induced intoxication which resulted in the statements made by the defendant. This assertion is not supported by the record which reflects that there was no inducement on the part of the police officers. Furthermore, the record indicates that the defendant made some of the statements challenged before he had ever purchased a drink. This Court cited Penn v. State, Okl.Cr., 456 P.2d 606 (1969) in Jenkins v. State, Okl.Cr., 477 P.2d 403 (1970), and said:

"'It is not error for the trial court to admit into evidence defendant's statement where it is clearly shown that defendant was properly advised of his constitutional rights, and that he knowingly and intelligently waived those rights.'"

This Court has also stated that there is no requirement that police stop a party making a voluntary statement and advise them of their constitutional rights. Johnson v. State, Okl.Cr., 448 P.2d 266 (1968). After a careful examination of the complete record in the instant case, we conclude that the defendant's statements were voluntary and free of any taint of inducement, and as such were admissible as evidence in the trial court.

■ Defendant urges, in his third proposition, that there was not sufficient evidence submitted to corroborate the testimony of the accomplice involved in the subject crime. It is uncontested that Jimmy Stewart was an accomplice in this action. Defendant urges that there has been insufficient corroboration as required by 22 O. S.1971, § 742, which states:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

However, a review of the record indicates that the testimony of Stewart was corroborated by various witnesses. Chris Gers testified as to the condition of the burglary scene on the morning that followed the burglary. Joyce Hughes testified that she had seen the accomplice and the defendant together on the night of the burglary. Investigator Wayne Warthen corroborated Stewart's testimony to the effect that he had observed Stewart's car in the area of the burglarized building with three subjects therein. Furthermore, he indicated that he later saw Stewart's car in the burglarized building's parking lot with only one subject in it. Wayne Warthen, along with other police officers, testified as to the condition of the building. Patrolman Dale Phillips testified that in response to a call to check on a suspicious vehicle, he stopped Stewart's automobile which matched the description given. He indicated that he observed Stewart and two others inside the

car. In Woody v. State, 95 Okl.Cr. 21, 238 P.2d 367 (1951), this Court stated:

> "This court has held that it is not necessary that the corroborating testimony be complete, independent proof of the crime, but if an accomplice's testimony is corroborated in part, the jury is then justified in believing the accomplice's entire story to be true."

In Smith v. State, Okl.Cr., 278 P.2d 557 (1954), this Court cited with approval Taylor v. State, 90 Okl.Cr. 283, 213 P.2d 588 (1950), wherein we stated:

> " 'Where the sufficiency of the evidence to corroborate an accomplice is challenged, this court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict.' "

Moreover, as we have previously held that defendant's statements were properly admitted into evidence, the defendant's own statements provide sufficient corroboration of the accomplice's testimony. That a defendant's statement can be used for corroboration has long been accepted by this Court. See Brewer v. State, 63 Okl.Cr. 389, 75 P.2d 901 (1938); Spivey v. State, 69 Okl.Cr. 397, 104 P.2d 263 (1940); Blumhoff v. State, 72 Okl.Cr. 339, 116 P.2d 212 (1941). The defendant's statements made to Deputy Sheriff Merle Salthouse in the instant case sufficiently corroborate the testimony of the accomplice Stewart. In an analogous situation found in Gile v. State, Okl.Cr., 473 P.2d 275 (1970), this Court stated:

> "The corroborative evidence necessary to support the accomplice's testimony was supplied by Officer Ruddell, who received defendant's confession after having thoroughly advised the defendant of his rights in accordance with Miranda v. Arizona, . . . ."

This Court feels that a review of the record reflects sufficient corroboration of the testimony of the accomplice and we, therefore, find no merit to defendant's third proposition of error.

Defendant asserts, in his fourth, fifth and sixth propositions, that the trial court erred in refusing to give Defense Instructions 1, 2, and 3. These assignments of error are not properly before this Court as the casemade does not contain defendant's requested instructions. We follow the rule as set forth in Phillips v. United States, 2 Okl.Cr. 628, 103 P. 861 (1909), to the effect that when the casemade does not contain a copy of the requested instructions, alleged error in failure to give said instructions will not be considered on appeal.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs,

BRETT, J., concurs in results.

## OPINION ON REHEARING

On April 9, 1974, this Court affirmed the conviction of Larry Parrott, hereinafter referred to as defendant, for the crime of Burglary in the Second Degree. From that opinion, defendant has filed a Petition for Rehearing.

In our previous opinion this Court did not consider defendant's fourth, fifth, and sixth propositions of error, as they were not properly before this Court. Defendant has now corrected this situation in his Petition for Rehearing.

Defendant argues that the trial court erred in refusing to give in toto requested Defense Instruction No. 1. The trial court gave Instruction No. 4, which was:

> "You are further instructed that voluntary intoxication is no defense, unless at the time of the crime the defendant was so under the influence of intoxicants that he was unconscious of what he was doing and was incapable of forming the necessary intent."

Defendant cites error in that the trial court did not add to this instruction, "Such fact constitutes a valid defense to this prosecution." This tag statement is intended to refer back to the state of intoxication.

■ We have carefully reviewed the requested instruction and the instructions that were given. It is our opinion that the instructions given by the trial court correctly state the applicable law. In Haywood v. State, Okl.Cr., 513 P.2d 322 (1973), this Court, in speaking to the sufficiency of an instruction, quoted Kerr v. State, Okl.Cr., 276 P.2d 284 (1954), stating:

"It is not error to refuse requested instructions which are proper statements of the law when such requested instructions are substantially covered by the instructions given by the court."

See also Buie v. State, Okl.Cr., 368 P.2d 663 (1962).

We, therefore, find this assertion of error by defendant to be without merit.

■ Defendant also urges that the trial court erred in refusing to give requested Defense Instruction No. 2 to the effect that defendant was entitled to have the jury instructed on 21 O.S.1971, § 1438, as a lesser and included offense. This Court has repeatedly held that the trial court is bound to give instructions on those issues of law which have a bearing on the case. Sheehan v. State, 83 Okl.Cr. 41, 172 P.2d 809 (1946); Hickman v. State, Okl. Cr., 344 P.2d 593 (1959). Whether an instruction on a given point should be given depends upon the circumstances presented in that particular case. In the instant case, defendant was charged under 21 O.S.1971, § 1435 (Burglary in the Second Degree) and defendant urges that the trial court should have also instructed the jury as to the provisions of 21 O.S.1971, § 1438 which differs from Burglary in the Second Degree only in that a "breaking" is not an element of the offense. Defendant argues that 21 O.S.1971, § 1438 is a lesser and included offense and under some circumstances we agree with this contention. To be considered as a lesser and included offense, it is necessary that there be some evidence that tends to prove the commission of the lesser and included offense. This Court has held that it is error for the trial court to refuse to instruct the jury of their right to convict a defendant of a lesser and included offense where there is evidence tending to prove the commission of this lesser crime. Kilpatrick v. State, 71 Okl.Cr. 129, 109 P.2d 516 (1941); Stiles v. State, 53 Okl.Cr. 187, 9 P.2d 58 (1932). Therefore, in the instant case there has to be some evidence of the lesser offense before it can be validly asserted that the trial court erred in refusing the proffered instruction. After a complete review of the record, this Court concludes that there was no evidence presented tending to prove the commission of the lesser and included offense. In Hall v. State, Okl.Cr., 503 P.2d 229 (1972), this Court stated:

"In Oklahoma all persons concerned with the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, are responsible as principals. 21 O.S.1971, § 172. 22 O.S.1971, § 432. It is, of course, necessary that there be some aiding by acts, words, or gestures, or consenting to the commission of the crime."

In State v. Hunt, Okl.Cr., 330 P.2d 756 (1958), this Court pointed out, in the third paragraph of the Syllabus:

"All persons who are concerned in the commission of an offense are 'principals' and should be prosecuted and convicted as such . . ."

■ We have carefully reviewed the record in the instant case and find that there was no evidence introduced that tended to prove the commission of a lesser and included offense. Inasmuch as defendant's co-defendant was not entitled to an instruction on a lesser and included offense, it necessarily follows, in light of the two quoted statutes, defendant, who was an aider and abettor, was not entitled to such

instruction. We, therefore, find this contention of error to be without merit.

 Defendant further asserts that the trial court erred in refusing to give Defense Instruction No. 3 to the effect that defendant was entitled to have the jury instructed on 21 O.S.1971, § 1760, as a lesser and included offense. Defendant asserts that there was no showing that the defendant possessed the necessary felonious intent to commit the crime charged. This Court, in Garret v. State, Okl.Cr., 350 P.2d 983 (1960), stated:

> "Where it is shown that one accused of burglary broke and entered a store in the night time, it may ordinarily be presumed that he did so with intent to steal, . . ."

This Court has heretofore asserted that the determination of intent is a question for the trier of fact. In Reynolds v. State, Okl.Cr., 511 P.2d 1145 (1973), this Court quoted from the Syllabus in Murphy v. State, 79 Okl.Cr. 31, 151 P.2d 69 (1944), stating:

> "Where intent is necessary in the commission of a crime, it is a question for the jury, under all the facts and circumstances, of each individual case. It may be proved by direct or circumstantial evidence."

This Court has also held that a determination by the trier of fact will not be disturbed on appeal when the record discloses facts that support such a conclusion. Roberts v. State, Okl.Cr., 473 P.2d 264 (1970).

 A review of the record indicates that there was sufficient evidence for the jury to determine that the defendant had the requisite intent. We, therefore, find this assertion of error to be without merit.

For all of the above and foregoing reasons, the Petition for Rehearing should be, and the same is hereby, denied. The Clerk of this Court is directed to issue the Mandate forthwith.

BLISS, P. J., concurs.

BRETT, J., not participating.