Billy Don HOLDGE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–663.

Court of Criminal Appeals of Oklahoma.

Oct. 25, 1978.

Rehearing Denied Nov. 27, 1978.

Red Ivy, Chickasha, for appellant.

Larry Derryberry, Atty. Gen., Mary Kathleen Rhodes, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Billy Don Holdge, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Caddo County, Case No. CRF–76–2, for the offense of Shooting With the Intent to Kill, in violation of 21 O.S.1971, § 652. His punishment was fixed at a term of five (5) to ten (10) years' imprisonment. From said judgment and sentence an appeal has been perfected to this Court.

As his first assignment of error the defendant contends that the trial court erred in failing to sustain his motion for mistrial based upon the prosecuting attorney's remarks during voir dire examination that the defendant had the right to remain silent. The record reflects the prosecuting attorney propounded the following question to the jury:

"Billy Don Holdge ___ the question may be to each of you ___ is that he does not have to testify in any way. It is his Constitutional right; his First Amendment right that he does not have to give any self-incriminating type of testimony, or any testimony or any evidence of any kind unless he wants to or he chooses to, so, if there is any juror on this jury panel at this time ____" (Tr. 5).

Defense counsel timely moved for a mistrial which was overruled by the trial court. We agree with defendant's contention that the prosecuting attorney's remark was error. See *Hanf v. State*, Okl.Cr., 560 P.2d 207 (1977). However, we must further find that the error was harmless in that defendant elected to testify in his own behalf. In dealing with a similar assignment of error in *Young v. City of Tulsa*, Okl.Cr., 563 P.2d 156 (1977) we stated:

". . . In *McGaha v. State*, Okl.Cr., 492 P.2d 1101 (1971), this Court held in a situation where the accused failed to testify in his own behalf that the harmless error doctrine under the rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), would apply where there is no reasonable possibility that the comment complained of might have contributed to the conviction. In the instant case the error was certainly harmless. The defendant chose to testify in his own behalf and there is no reasonable possibility that the comment could have contributed to the conviction. . . ."

Defendant alleges in the second assignment of error that the trial court erred in failing to grant a mistrial by reason of prejudicial and inflammatory remarks contained in an article on the front page of the local Anadarko newspaper which was printed on the day of the trial. The article which was made a part of the appellant's record states as follows:

"Assistant District Attorney Tony Burns said the trial of Billy Don Holdge, 37, of Fort Cobb on the charge of shooting with intent to kill also was scheduled to

"Holdge is accused of shooting Al Bearden, 17, of Fort Cobb in the arm in an incident at Fort Cobb on New Year's Eve 1976.

"Holdge allegedly came out of his home and began firing a rifle as Fort Cobb Police Chief Lyle Gillis approached. One of the rifle shots injured the Bearden youth, who was standing in the street with friends nearly a block away.

"Gillis reportedly had followed Holdge to his home after stopping him for reckless driving." (Tr. 15).

Defendant cites as authority 5 O.S., Chap. 1, App. 3, D.R. 7–107(D) which prohibits an attorney during the selection of a jury or the trial in a criminal matter from "making an extra judicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to the trial, parties, or issues in the trial or other matters that are reasonably likely to interfere with a fair trial, except that he may quote from or refer without comment to public records of the court in the case."

The record does not support defendant's allegation that the prosecuting attorney's conduct violated the provision of the code of professional responsibility. The trial court conducted an in camera hearing at which time the newspaper reporter who wrote the article was called as a witness. She testified that the only information provided to her by the prosecuting attorney was the date of the trial. The alleged factual background contained in the story was obtained from the original article appearing in the newspaper within days of the actual occurrence. The trial court questioned the jurors as to the article and determined that only one juror had read it. That juror unequivocally stated that the article did not cause him to form any kind of an opinion in the case. We therefore find this assignment of error to be without merit.

The defendant urges in his third assignment of error that the trial court erred in failing to sustain his demurrer and motion for directed verdict. Defendant argues that the State totally failed to show a specific intent on his part to kill the victim, Al Bearden.

In his fourth assignment of error the defendant contends that the trial court erred in giving Instructions Nos. 3 and 7 and by failing to give defendant's requested instruction on simple assault and battery.

Since these assignments of error are inter-related we will deal with them together.

The State's evidence tended to establish that at 11:00 p. m. on December 31, 1975, in Fort Cobb, Oklahoma, Police Chief Lyle Gillis was issuing a traffic citation to a motorist when a car driven by the defendant twice sped by them at an excessive rate of speed and then stopped. Chief Gillis, whom the defendant had threatened to kill earlier, advised the defendant to pull over and park but instead the defendant sped away in a blue Corvette owned by Dan Brinkley, a passenger in the car.

Chief Gillis and Officer Gray pursued the Corvette until the defendant parked it in front of his house and entered his home. Brinkley emerged from the car and walked back to the police car and spoke to Chief Gillis. Thereafter, Chief Gillis drove away from the house requesting backup assistance. As he did so, a group of curious boys, attracted by the chase, assembled in front of a funeral home a short distance from the defendant's home.

Albert McCauley drove up and stopped to talk with the boys. Subsequently Brinkley came over to the boys when the defendant emerged from his home with a 30.06 Winchester rifle. He fired one shot in the air and the second shot he fired struck Albert Bearden who was one of the boys standing near the funeral home. The bullet passed through Bearden's right arm and entered the headliner of McCauley's car. Fearing injury to his two small children, McCauley drove away.

In response to a call by the defendant, Caddo County Deputy Sheriff Forest Hall arrived at defendant's residence at approximately 11:30 p. m. December 31, 1975.

He found the defendant working on a jammed rifle and was advised by the defendant that the defendant had fired two shots into the air. The deputy left the house and learned that the McCauley car had been damaged by a gun shot and that someone had been wounded. He returned to the home, advised the defendant not to leave and that he would investigate the incident. He left the premises to conduct an investigation and returned later to find that the defendant was gone. The defendant fled to Del Rio, Texas, where he was later arrested and then returned to Caddo County.

The Bearden boy, who did not know the defendant at the time of the shooting, was hospitalized for three weeks as a result of the gun shot wound inflicted by the defendant.

The defendant, testifying in his own behalf on direct examination, stated that he did not wilfully, wrongfully and intentionally shoot or intend to cause harm to anyone on December 31, 1975.

Thereafter, on cross-examination the following questions were asked and answers received:

"MR. BURNS:

"Q. Mr. Holdge, you have heard the testimony here in this courtroom today or yesterday in regard to an Officer seeing you fire a rifle out in your yard. I now show you what has been marked as State's Exhibit Number # 7, and ask you if this is your rifle?

"A. Yes, sir, it is my rifle.

"Q. Is this the rifle you fired there in Fort Cobb on the night of December 31, 1975?

\*      \*      \*      \*      \*      \*

"Q. Mr. Holdge, what were your intentions when you fired that rifle into a crowd of people standing by a car?

"A. I didn't know I was firing into a crowd of people.

"Q. Mr. Holdge, you have heard all the testimony in regard to that rifle being fired twice, and that is a bolt action rifle. If was fired once and it went straight up in the air, is that correct? Is that what happened?

"A. Yes, sir.

"Q. The second time, Mr. Holdge, you had to eject your shell out of the chamber and inject another shell into the chamber to fire it a second time. What were your intentions when you fired, Mr. Holdge?

"A. The second time the gun fired was accidental as I was pulling it down.

"Q. You were pulling it down? You mean that gun goes off automatically?

"A. No.

"Q. Mr. Holdge, don't you have to take the bolt and take the shell out and eject the hull on the ground and inject another one back into the gun?

"A. Yes, sir.

"Q. And it went off accidentally?

"A. Yes, sir.

"Q. Mr. Holdge, will you explain if it went off accidentally and that is what your intentions were why did eject the second hull from the gun?

"A. I thought I was unloading it.

"Q. You weren't attempting to put a third shell into the chamber then? Is that what you are saying?

"A. It was ___ it was jammed and trying to move the bolt and this and that. * * *"

Instruction number three of which the defendant complains provides:

"In this case the specific intent on the part of the defendant to kill Al Bearden, as alleged in the Information, is an essential ingredient of the crime charged, and a material fact which must be proved to your satisfaction by legal and competent evidence beyond a reasonable doubt before you can convict the defendant of shooting with intent to kill. Such intent, however, is a question of fact to be determined by the jury from all the facts and circumstances in evidence before you.

"In this connection you are instructed that under the law one who intentionally and indiscriminately fires a gun into a group of people with the intention of killing some one of them, or a person believed by the one firing the gun to be one of them, is guilty of shooting with intent to kill each of them."

Instruction number seven of which defendant complains provides as follows:

"In regard to the lesser included offense of assault with a dangerous weapon, you are instructed that the specific intent on the part of the defendant to do bodily harm to Al Bearden is an essential ingredient of such crime and a material fact which must be proved to your satisfaction by legal and competent evidence beyond

a reasonable doubt before you can convict the defendant of the lesser included charge of assault with a dangerous weapon. Such intent, however, is a question of fact to be determined by the jury from all the facts and circumstances in evidence before you.

"In this connection you are instructed that under the law one who intentionally and indiscriminately fires a gun into a group of people with intention of doing bodily harm to some one of them, or to a person who he believes to be one of them, is guilty of assault with a dangerous weapon as to each of them."

The court also gave instruction number nine which provides:

"As one of his defenses in this case the defendant contends that the gun fired accidentally with reference to the bullet which is alleged to have struck Al Bearden.

"In this connection, if you find and believe from the evidence in this case that the firing of said bullet was accidental on the part of the defendant, or if you entertain a reasonable doubt thereof, then you must find the defendant not guilty, and acquit him."

■ Under the evidence presented by the State, which tended to establish that the defendant had on a prior occasion threatened to kill Chief Gillis and from the undisputed facts and circumstances, the defendant fired the bullet which struck Albert Bearden.

The giving of instructions number three and seven were proper. See *Phillips v. United States*, 2 Okl.Cr. 628, 103 P. 861 (1909), in which we held that shooting into a crowd with the specific intent to kill a particular person is an assault to kill upon each member of the crowd.

■ Instruction number nine was given in accordance with the only defense testified to by the defendant, that of accident. It was unnecessary to give an instruction on assault and battery. See *Bates v. State*, Okl.Cr., 505 P.2d 991 (1973).

Defendant finally asserts that the prosecuting attorney made an improper remark during the closing argument. The remark of which defendant complains was as follows:

" . . . and even their witness, Mr. Gray, saying that he came back to the car and made a statement to them. What do you think he told them, ladies and gentlemen? Mr. Brinkley ___" (Tr. 256).

The record reflects that the trial court properly sustained defendant's objection and admonished the jury to disregard the statement. We have consistently held that the court's admonition to the jury to not consider the remarks of counsel usually cures an error unless it is of such a nature that after considering the evidence that the error appears to have determined the verdict. See *Kitchens v. State,* Okl.Cr., 513 P.2d 1300 (1973). We cannot find that considering the evidence the prosecuting attorney's remark was so prejudicial as to have affected the verdict. The judgment and sentence is accordingly *AFFIRMED.*

CORNISH and BRETT, JJ., concur.